MR. JUSTICE WEBER
delivered the Opinion of the Court.
Jerry Paul Forsyth (Forsyth) was charged with deliberate homicide in Flathead County District Court for allegedly killing his wife, Karen Forsyth, on December 11, 1979. Forsyth has filed a petition for a writ of supervisory control claiming jury tampering and prosecutorial misconduct in a previous trial which is claimed to warrant dismissal of the proceeding, denial of speedy trial and error of the District Court in ordering a change in the place of trial. We decline jurisdiction of the petition for supervisory control.
The issues raised in the petition are:
1. Was Forsyth denied a speedy trial?
2. Has jeopardy attached because of jury tampering or prosecutorial misconduct?
3. Does prosecutorial misconduct in this case constitute a deprivation of due process sufficient to warrant dismissal of the criminal proceeding?
4. Did the district court err in ordering a change in the place of trial?
On January 28, 1980, Forsyth was charged with deliberate homicide. The first trial was held in Flathead County during March and April 1980 and resulted in Forsyth’s conviction. That conviction was reversed by this Court in State v. Forsyth (1982), 197 Mont. 248, 642 P.2d 1035. Forsyth’s second trial commenced in Lake County on December 1, 1982, and a mistrial because of jury deadlock was declared by the district court on January 2, 1983.
Following the second trial, various motions and orders were made with regard to the furnishing of a partial and complete transcript. *483 Forsyth petitioned this Court for supervisory control regarding appointment of counsel. On May 11, 1983, this Court held there was no showing sufficient to warrant supervisory control. Forsyth then asked for a hearing on availability of public defender firms to represent him. That hearing was held on June 22, 1983, and resulted in the appointment of public defenders as counsel. Forsyth petitioned this Court a second time for a writ of supervisory control and on October 6, 1983, the writ was granted and Forsyth’s present counsel was appointed at public expense.
On November 14, 1983, the district court set a tentative trial date for February 1984. At a conference in December 1983 Forsyth renewed motions for evidentiary hearings on jury tampering and prosecutorial misconduct. Evidentiary hearings were held as requested by Forsyth and on April 24, 1984, the district court denied the motion to dismiss for double jeopardy and lack of due process predicated upon jury tampering and prosecutorial misconduct. On May 10, 1984, Forsyth moved to dismiss for lack of a speedy trial, but his motion was denied on May 23, 1984.
On June 6, 1984, the trial court ordered that the trial be held in Flathead County with a jury selected in Toole County. The court set a trial date of October 1, 1984. Forsyth again moved the court to dismiss for lack of a speedy trial. The district court denied this motion on July 13, 1984. Forsyth then advised the district court of his intent to file a third petition for supervisory control and the district court then vacated the October 1, 1984, trial date.
I
In view of the number of requests for supervisory writs in this action, it is appropriate that we review the fundamental standards for assumption of supervisory control. Under Article VII, Section 2(2), Montana Constitution, this Court has general supervisory control over all courts. Rule 17, M.R.App.Civ.P. describes the procedure for original writs and in part states:
“The Supreme Court is an appellate court but it is empowered by the constitution of Montana to hear and determine such original and remedial writs as may be necessary or proper to the complete exercise of its jurisdiction. The institution of such original proceedings in the Supreme Court is sometimes justified by circumstances of an emergency nature, as when a cause of action or a right has *484 arisen under conditions making due consideration in the trial courts and due appeal to this court an inadequate remedy . . .”
In view of the substantial increase in applications for supervisory control in recent years, it is also appropriate to restate the basic standards guiding acceptance of original jurisdiction by this Court, as stated in State ex rel. O’Sullivan v. District Court (1946), 119 Mont. 429, 431-432, 175 P.2d 763, 764:
“[S]upervisory control is an extraordinary remedy, to be exercised only in extraordinary circumstances. We have said . . . that to justify such a writ an exigency or emergency must be shown to exist, or that a gross injustice would result from a denial of the writ, and the absence of other adequate relief .... ‘As the appellate jurisdiction was granted for the purpose of revision and correction, and the original jurisdiction under these writs was granted to enable us to render such relief as is appropriate under them, so the supervisory power was granted to meet emergencies to which those other powers and instrumentalities are not commensurate. It is independent of both, and was designed to infringe upon the functions of neither. It has its own appropriate functions, and, without undertaking to define particularly what these functions are, we think one of them is to enable this court to control the course of litigation in the inferior courts where those courts are proceeding within [their] jurisdiction, but by mistake of law, or willful disregard of it, are doing a gross injustice, and there is no appeal or the r.emedy by appeal is inadequate ....”’ [Citation omitted.]
In 1902, this Court pointed out that an application for supervisory relief must establish more than simple error, otherwise, the writ “would lie to correct each and every mistake of district courts, and in great measure supplant the ordinary appeal.” State ex rel. Harris v. District Court (1902), 27 Mont. 280, 282, 70 P. 981, 982. These basic principles regarding assumption of supervisory control are embodied in Rule 17, M.R.App.Civ.P., which requires that an applicant establish circumstances of an emergency nature, as when a cause has arisen under conditions making consideration at the trial level and appeal to this Court an inadequate remedy.
We will now review the record in this case to determine whether there are extraordinary facts which warrant issuance of a supervisory writ.
*485 II
Because the facts relevant to all four issues are intertwined we will first review the facts in general.

Bailiff’s Juror Communications

The bailiff during the second trial as well as eight regular jurors and two alternate jurors testified at an April 5, 1984, hearing before the district court regarding the bailiff’s oral communications with the jury. Forsyth relied on the following improper comments made by the bailiff to various jurors in substance as follows: that the bailiff could say one word and this would be all over with; that a prosecution witness had nearly blown it at the first trial and that the jury should see her medicine cabinet; during a recess from cross-examination by Forsyth’s counsel, the bailiff commented that “we can sure tell who is getting paid by the hour”; that the trial had already cost $6,000, a comment made when handing out checks to the jurors; that all of the jurors should stay together while looking at the crime scene in order that nothing would happen which could justify a retrial; the bailiff advised the jurors after lengthy conferences between counsel and the court that the county attorney, defendant’s attorney and the trial judge would explain the reasons for the conferences; the bailiff identified the victim’s parents to several jurors; and a comment to the jury regarding the length of jury deliberation in the prior trial, and that in the present trial the jurors could anticipate a conclusion in time for a happy new year.
In its order of April 24, 1984, the district court found that at no time during the trial did the bailiff discuss with any juror the merits of the case from either party’s standpoint, nor did he express to any of the jurors his opinion or expectations with regard to a proper verdict or outcome; that the bailiff was not present during and did not participate in jury deliberations; with the possible exception of an assurance that counsel would meet and respond to their questions after the trial, none of the incidents were discussed by the jurors in their deliberations, nor did any of the bailiff’s comments or conduct influence the jury’s deliberations or effect their verdict; that the jurors who filed affidavits complaining of the incidents testified that they concluded that the defendant was not guilty and unwaiveringly followed that conclusion through the course of deliberation; and the jurors who filed affidavits stating that the bailiff had been too friendly in conversation acknowledged that nothing in his behavior *486 had influenced their view of the case or their votes in deliberations. As a result, the district court concluded that none of the actions complained of was motivated by a desire or attempt by the bailiff to influence the jurors’ perception of the trial or to affect the jury’s deliberations or decision-making, and that none of the bailiff’s comments influenced the attitude, perception or ultimate judgment of any juror.

Prosecutorial Misconduct

The only witnesses on this issue at the district court hearing were Forsyth’s principal attorney and the Flathead County Attorney. Their testimony addressed the circumstances surrounding the filing of the accountability and obstruction of justice complaint against Gary Red Elk on November 24, 1982, one week before the second trial began. Counsel for Forsyth spends many pages reviewing in detail the testimony of these witnesses. Rather than restating this testimony, we will review the District Court’s findings of fact. The court found that the state filed a complaint against Gary Red Elk charging him with accountability for deliberate homicide, a felony, and obstruction of justice, also a felony. The district court also found that the information and allegations in support of its complaint were a result of an interview in Great Falls between two Kalispell police officers and the state’s principal witness, Mr. Richards. At that time, Mr. Richards admitted that he had not been entirely candid with the police in respect to Red Elk’s knowledge of the offense and had informed the chief investigator that Red Elk had assisted Forsyth in planning and committing the offense and that he had obstructed the police department investigation. The district court found that the County Attorney confronted Red Elk, a former police officer, with the allegations mentioned and offered to allow him to deny or explain them as a part of a polygraph examination; that Red Elk did take a polygraph examination which suggested deception on his part with respect to these allegations; and that during the second trial, Red Elk was called as a witness and was granted transactional immunity when ordered by the judge to testify. Following the trial the charges against Red Elk were dismissed. At the December 1,1983, hearing of Forsyth’s motion to dismiss because of the claimed prosecutorial misconduct, the district court granted the defense counsel an opportunity for a continuance to obtain other evidence, but Forsyth’s counsel declined the opportunity.
Based upon these facts, the district court concluded that the com *487 plaint against Red Elk and his arrest were supported by probable cause; that nothing in the record suggested that the state deliberately timed or maneuvered the filing of the charges against Red Elk in an attempt to prejudice Forsyth’s right to a fair trial; that the charges pending against Red Elk had no connection with the jury’s eventual inability to reach a verdict and did not affect Forsyth’s right to a fair trial. Based upon these conclusions regarding prosecutorial misconduct and the court’s conclusions regarding jury tampering, the district court denied Forsyth’s motion to dismiss.

Speedy Trial

Forsyth moved for dismissal for lack of speedy trial on May 4, 1984, and July 11, 1984, and the motions were denied. These motions were decided with reference to events which occurred after completion of the second trial in January 1983. The record indicates that the following factual disputes were the primary problems giving rise to the speedy trial issue: requested dismissal of the proceedings because of the bailiff’s comments to the jury and prosecutorial misconduct; a request that the transcript of the entire second trial be provided to Forsyth at state cost; a request that Forsyth continue to be represented by his present counsel rather than regular public defender; and the issue of whether a third trial should be held. It is important to note that the first three of these points were also the subject of prior petitions for writs of supervisory control before this Court.
The district court’s order of May 23, 1984, contained findings of fact which are summarized as follows: following the original conviction of Forsyth in 1980, its reversal in 1983 and the subsequent trial ending in an inability to agree upon a verdict, Forsyth has been at liberty and available on a continuing basis to assist counsel in preparation of a defense; the record does not disclose that Forsyth has been chastised or outcast by friends or family members or that he has otherwise suffered abnormally as a result of the charges; no attempt has been made by Forsyth to demonstrate actual prejudice; there is no evidence to support Forsyth’s contention that the state has consciously or deliberately attempted to delay trial or otherwise prejudice his rights; on the contrary, that the chronology of events since January 1983 demonstrates that virtually the entire lapse of time about which Forsyth has complained is directly attributable to Forsyth himself; following a succession of petitions for supervisory control by the defendant, the district court entered orders requiring *488 a portion of the transcript to be furnished, and subsequently additional portions; the District Court considered Forsyth’s contentions that evidentiary hearings on the allegations of jury tampering and prosecutorial misconduct were necessary; and the District Court ultimately ordered the balance of the transcript. The court’s findings generally accounted for all time delay up until the hearing on the motions for dismissal. The district court concluded that the passage of time from the most recent trial commencing in December 1982 is sufficient to prompt a speedy trial inquiry; that the motion constitutes an assertion of defendant’s right to a speedy trial but represents the first and only significant occasion upon which Forsyth has expressed any genuine concern as to speedy trial; that the state has not interposed motions or other actions for the purpose of delay but has been diligent in preparing for trial; that the delays of which Forsyth now complains were necessitated almost exclusively by the defense counsel’s vigorous, spirited and occasionally protracted defense and are therefore not chargeable to the state; that no prejudice to the defendant will be presumed and that the defendant has failed all together to demonstrate any impairment of his right to a fair trial as a result of the delay; and that it would have been premature and unjust for the district court to conduct a trial of the matter prior to considering and ruling upon Forsyth’s several motions all of which were related to the selection, adequacy and compensation of counsel, opportunity to prepare a comprehensive defense or request for dismissal of charges. Based upon all of the foregoing, the district court denied the defendant’s motion to dismiss.

Place of Trial

On December 23, 1983, the state filed a motion for change of place of trial and on June 6, 1984, the district court ordered that trial be held in Flathead County before a jury selected in Toole County. While Forsyth makes an extensive argument with regard to the reasons for change of place of trial originally from Flathead County to Lake County, there are no facts in the record to demonstrate prejudice under the procedure ordered by the court, that being the impaneling of a jury in Toole County which is not an adjacent county, and the actual trial in Flathead County.
Ill

Has Forsyth Been Denied Speedy Trial?

*489 Forsyth has failed to demonstrate an emergency which warrants acceptance of original jurisdiction under Rule 17, M.R.Civ.P. This issue may be raised on appeal to this Court in the event of conviction. We conclude that there is no basis for supervisory control on this issue.
IV

Has Jeopardy Attached Because of Jury Tampering or Prosecutorial Misconduct?

This Court has previously held that the refusal by a district court to dismiss criminal charges on a double jeopardy claim does not warrant supervisory control, as the remedy for a criminal defendant lies in an appeal following conviction or in a post-conviction proceeding. State ex rel. LaFlesch v. District Court (1974), 165 Mont. 302, 306, 529 P.2d 1403, 1405.
Forsyth has presented no facts justifying supervisory control on this issue under Rule 17. We decline to rule on whether jeopardy has attached because of jury tampering or prosecutorial misconduct. This issue may be raised on appeal in the event of conviction.
V

Was Prosecutorial Misconduct a Deprivation of Due Process Sufficient to Warrant Dismissal of the Criminal Proceeding?

The record does not disclose facts warranting supervisory control on this issue. Such a remedy is warranted only where there is an emergency which renders appeal an inadequate remedy. In reaching this conclusion we do not rule on the ultimate issue, which may be raised in this Court on appeal in the event of conviction.
VI

Did the District Court Err in Ordering a Change of Place of Trial Back to Flathead County?

Again, the record is devoid of facts to suggest a reason for the exercise of supervisory control on this issue. There is little in the record to suggest that the trial in Flathead County with a jury chosen in Toole County would not result in a fair trial. We conclude that supervisory control is not warranted in this issue.
Our study of the record indicates that the district court carefully *490 analyzed and addressed the issues raised by Forsyth. We find nothing in the record to suggest that injustice would result from a denial of supervisory relief. Forsyth has failed to demonstrate that any emergency exists which renders appeal an inadequate remedy. We decline jurisdiction of defendant’s petition for supervisory control.
MR. CHIEF JUSTICE TURNAGE and MR. JUSTICES HARRISON and GULBRANDSON concur.