**PHILIP KEATING,**
Petitioner,
v.
**HON. JEFFREY SHERLOCK,**
District Judge,
First Judicial District,
**MIKE McGRATH,**
County Attorney, and
**VICKI FRASIER,**
Assistant County Attorney,
Lewis and Clark County, Montana, and
**JOSEPH P. MAZUREK,**
Attorney General of the
State of Montana,
Respondents.

Nos. 96-402, 96-452, 96-457.
Ordered September 10, 1996.
53 St.Rep: 855.
278 Mont. 218.
924 P.2d 1297.

220

## OPINION AND ORDER

In this opinion we address the legal issues raised by Petitioner Philip Keating (Keating) in three separate applications for extraordinary writs filed in July and August 1996.

### Procedural Background

Keating was charged in the First Judicial District, Lewis and Clark County, with felony assault; criminal possession of dangerous drugs (methamphetamine), a felony; criminal possession of dangerous drugs (marijuana), a misdemeanor; and two counts of criminal possession of drug paraphernalia, misdemeanors. The matter was set for trial on July 9, 1996. The matter proceeded to trial on July 9, 1996 at which time a jury of twelve was selected. Pursuant to the practice of the First Judicial District with regard to trials of three days or less, as well as the stipulation of the parties, no alternate jurors were selected or seated with the twelve Petit jurors. Following the seating and swearing of the jury, opening statements were presented by both the State and Keating's counsel. Following the opening statements, the trial recessed for lunch.

When the proceedings resumed after lunch, Judge Jeffrey Sherlock informed the parties that during the lunch recess a juror had advised the court that she was ill and would not be returning to jury duty. After Judge Sherlock was unsuccessful at obtaining an agreement to continue the trial in order to wait for the juror, the judge discussed with counsel the possibility of proceeding with eleven jurors, or calling additional members of the Keating jury panel in order to obtain a new juror. Keating rejected both these alternatives and requested a mistrial. The court declared a mistrial without objection from Keating. Trial was then rescheduled for July 22, 1996.

On Wednesday, July 17, Keating filed a motion to dismiss all of the charges on double jeopardy grounds. On Thursday, July 18, prior to Judge Sherlock's ruling on the pending motion to dismiss, Keating filed an Application for a Writ of Supervisory Control in the Supreme Court (No. 96-402) seeking a stay of the District Court proceedings until the double jeopardy issue had been addressed. On July 18, this Court issued an order staying further proceedings in the District Court until such time as the State had an opportunity to respond to the motion. Later that same day, the State filed a response asking this Court to reconsider its order vacating the trial setting and to

dismiss Keating's application for a writ of supervisory control. The State contended that granting the writ was inappropriate since Keating had an adequate remedy by way of appeal. We declined to reconsider our prior order and remanded to the District Court for a determination of whether the mistrial was the result of manifest necessity. In our order refusing to reconsider, we indicated that an opinion from this Court would be issued at a later date.

In subsequent proceedings, the trial court ruled that Keating impliedly consented to the mistrial and that the declaration of a mistrial due to a sick juror constituted manifest necessity. The court then scheduled a new trial for August 5, 1996. On August 1, 1996, Keating filed another Application for Writ of Supervisory Control (No. 96-452) arguing that the District Court's finding that Keating acquiesced in the mistrial was erroneous. Keating's August 1, 1996, Application did not raise an issue as to whether the juror was, in fact, ill; did not address the court's holding that juror illness constituted manifest necessity; nor did the Application contend that he had been denied an evidentiary hearing on the question of manifest necessity. We declined to issue the writ of supervisory control.

On Monday, August 5, 1996, the second trial proceeded as scheduled. The jury was empaneled and sworn and the State proceeded with presenting its case. That afternoon, Keating filed an Application for a Writ of Habeas Corpus (No. 96-457) claiming that his right not to be placed again in jeopardy and his right to due process were denied when the trial court made a determination of manifest necessity without affording him an evidentiary hearing on that issue. All three applications are discussed below.

### Issues Presented

We phrase the issues presented as follows:

1. Must an issue of double jeopardy be addressed prior to the commencement of the second trial or is an appeal after the second trial adequate?

2. Did Keating consent to a retrial by moving for a mistrial and by failing to object to the court's declaration of mistrial?

### Discussion

1. Must an issue of double jeopardy be addressed prior to the commencement of the second trial or is an appeal after the second trial adequate?

On July 9, 1996, a jury was selected, empaneled and sworn and the counsel for the respective parties presented their opening statements. After a lunch break, a juror advised the court that she would not be able to continue to serve as a juror. Thereafter, Keating moved for a mistrial. The trial court declared a mistrial and set a new trial for July 22, 1996. Keating subsequently moved to dismiss the charges on the basis of the constitutional prohibition against placing a person twice in jeopardy. Fifth Amend., U.S. Const. and Art. II, Sec. 25, Mont. Const.

Before a question of double jeopardy arises, there must be an initial determination as to whether jeopardy has attached in the first instance. In a case which originated in Montana, the United States Supreme Court declared as unconstitutional, Montana's statutory provision that jeopardy attaches when the first witness is sworn. *Crist v. Bretz* (1978), 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24. In *Bretz*, the Court held that, in a jury trial, jeopardy attaches when the jury is empaneled and sworn, not when the first witness is sworn. Despite the *Bretz* decision, § 46-11-503(1)(d)(i), MCA, still provides that a prosecution is barred if: "the former prosecution was terminated for reasons not amounting to an acquittal and takes place: *in a jury trial, after the first witness is sworn* but before a verdict is returned. ..." (Emphasis added.) This provision is just as unconstitutional now as it was eighteen years ago. Here, the District Court acknowledged, as it must, that the pronouncement by the United States Supreme Court in *Bretz* controls over the provisions of the statute.

In the present case, a jury was empaneled and sworn and opening statements were presented before the juror informed the court that she would be unable to continue sitting due to illness. Accordingly, there is no question under the holding in *Bretz* but that jeopardy had attached at the point in time when the court declared a mistrial.

The trial court reset the matter for trial and Keating then moved to dismiss based upon the constitutional prohibition against placing a person twice in jeopardy. Keating argued that the issue of double jeopardy had to be addressed prior to the commencement of the second trial. Relying upon our decision in *State ex rel. Forsyth v. District Court* (1985), 216 Mont. 480, 701 P.2d 1346, the State countered that the matter could proceed to retrial and that Keating's double jeopardy issue could be adequately addressed on a subsequent appeal. In *Forsyth*, we held as follows:

> This Court has previously held that the refusal by a district court to dismiss criminal charges on a double jeopardy claim does not

warrant supervisory control, as the remedy for a criminal defendant lies in an appeal following conviction or in a post-conviction proceeding. *State ex rel. LaFlesch v. District Court* (1974), 165 Mont. 302, 306, 529 P.2d 1403, 1405.
*Forsyth*, 701 P.2d at 1351.

■ We now overrule *Forsyth* and *LaFlesch*. Both the U.S. Constitution, Fifth Amendment and the Montana Constitution, Article II, Section 25, protect individuals from being twice placed in jeopardy. If those guarantees are to have any significance, they require that the prohibition must be given effect prior to, not after, the second trial. If, as the State argued, Keating proceeded with a second trial and were convicted, he could appeal on the basis of double jeopardy. This Court could vacate the conviction. However, vacating the conviction would not change the fact that Keating would have been "put in jeopardy." The same would hold true even if Keating were acquitted in the second trial. That is, the acquittal would not alter the fact that, in being tried a second time, he was again placed in jeopardy of being convicted. The constitutional prohibition is designed to prevent the individual from being put at risk of conviction at a second trial. Once he endures the second trial, regardless of conviction or acquittal, he has incurred the risk; he has been put in "jeopardy," and that fact cannot be remedied or expunged after the fact.

The United States Supreme Court, in *Abney v. United States* (1977), 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651, established that a double jeopardy challenge is unique and must be addressed before the risk of a second trial occurs. The Court recognized that the Double Jeopardy Clause protects not only against double punishment but against "being twice put to trial for the same offense." *Abney*, 431 U.S. at 661, 97 S.Ct. at 2041.

In construing the Fifth Amendment language, "nor shall any person be subject (for the same offense) to be twice put in jeopardy of life and limb," the Court found that "[t]he 'twice put in jeopardy' language of the Constitution thus relates to a *potential*, i.e., the *risk* that an accused for a second time will be convicted of the 'same offense' for which he was initially tried." (Emphasis added.) *Abney*, 431 U.S. at 661, 97 S.Ct. at 2041 (quoting *Price v. Georgia* (1970), 398 U.S. 323, 326, 90 S.Ct. 1757, 1759, 26 L.Ed.2d 300, 303).

The Court noted: "[t]hese aspects of the guarantee's protections would be lost if the accused were forced to 'run the gauntlet' a second time before an appeal could be taken ...." *Abney*, 431 U.S. at 662, 97

S.Ct. at 2041. *See Mannes v. Gillespie* (9th Cir. 1992), 967 F.2d 1310, 1312 (citing *Abney*).

Accordingly, our holding in *Forsyth* and *LaFlesch*, that a double jeopardy challenge can be adequately reviewed on appeal, is erroneous and those decisions are hereby overruled. Rather, we reaffirm our approach in *State v. Van Dyken* (1990), 242 Mont. 415, 791 P.2d 1350, in which we granted a writ of supervisory control to address the question of whether declaration of a mistrial due to a hung jury constituted a double jeopardy bar to a second trial. We concluded that a hung jury did not bar a second trial. The significance of *Van Dyken* in the present case is that, contrary to the ruling in *Forsyth*, we did not require Van Dyken to proceed with a second trial and then pursue an after-the-fact appeal on the double jeopardy issue. In keeping with the nature of the double jeopardy guarantee, we granted the writ of supervisory control and resolved the issue before the second trial commenced.

In the case *sub judice*, jeopardy had attached during the first aborted trial. Accordingly, in light of Keating's subsequent motion to dismiss on double jeopardy grounds, our July 18, 1996, order staying a second trial until such time as the trial court could first address the questions of double jeopardy and manifest necessity was constitutionally mandated.

2. Did Keating consent to a retrial by moving for a mistrial and by failing to object to the court's declaration of mistrial?

■ Although Keating eventually filed a pleading in which he argued that his rights had been denied by the court's failure to grant him an evidentiary hearing on the question of manifest necessity, that pleading was both deficient and untimely. First of all, the pleading in which this issue was raised was an Application for a Writ of Habeas Corpus. The writ of habeas corpus is designed to address questions as to the legality of incarceration. Section 46-22-101, MCA; *State v. Sor-Lokken* (1991), 247 Mont. 343, 805 P.2d 1367; *August v. Burns* (1927), 79 Mont. 198, 255 P. 737.

■ Keating did not allege, nor does it appear from the record or pleadings, that he was incarcerated prior to or during the trial. In his petition for habeas corpus, Keating stated that his case had already been delayed for more than a year, during which, "there has been a very large bond and no violations of that bond ...." Thus it is apparent that Keating was not incarcerated at the time but was free on bond. Accordingly, there was no basis to grant a writ of habeas corpus.

■ Secondly, Keating's argument that he was entitled to an evidentiary hearing as to whether manifest necessity existed ignores the fact that, not only was it he that requested the mistrial in the first instance, but also, he did not object when the court, after unsuccessfully attempting to get counsel to agree to an alternative, declared the mistrial.

The United States Supreme Court has held that the manifest necessity standard applies only where the mistrial has been declared without the defendant's request or consent. *United States v. Dinitz* (1976), 424 U.S. 600, 607, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267, 273.

The Court in *Dinitz* went on to explain that:

[W]here circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error.

*Dinitz*, 424 U.S. at 607, 96 S.Ct. at 1079-80 (citing *United States v. Jorn* (1971), 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543).

This Court recognizes the general rule that when a defendant moves for a mistrial and the same is granted, the "manifest necessity" standard does not apply. *State v. Laster* (1986), 223 Mont. 152, 153, 724 P.2d 721, 722. This rule is codified at § 46-11-503(2)(a), MCA, which states:

A prosecution based upon the same transaction as a former prosecution is not barred under subsection (1)(d) when:

(a) the defendant consents to the termination or waives his right to object to the termination ....

■ Consequently, when a defendant requests or consents to a mistrial after jeopardy attaches, regardless of when it attaches, a second trial will not be barred by the double jeopardy prohibition. Although we declared § 46-11-503(1)(d)(i), MCA, (jeopardy attaching upon swearing of first witness in a jury trial) unconstitutional earlier in this opinion, (2)(a) survives as a constitutional codification of the United States Supreme Court rule in *Dinitz* when (2)(a) is read in conjunction with a constitutional reading of when jeopardy attaches in a jury trial (jeopardy attaching upon empaneling of jury in a jury trial).

■ *Dinitz* does provide an exception to the general rule that a second prosecution is not barred when a defendant requests or consents to a mistrial. This Court recognized the exception laid out in *Dinitz* that:

where the defendant moves for mistrial but is goaded into doing so by the prosecutor's actions, the double jeopardy clause bars retrial even though defendant himself moved for the mistrial. *Laster*, 724 P.2d at 722.

Before we address the question of whether Keating was "goaded" into requesting a mistrial, we will first discuss whether Keating consented to the mistrial at all. Keating claims that he did not acquiesce in the declaration of mistrial and, therefore, the manifest necessity standard should apply.

In *United States v. Smith* (9th Cir. 1980), 621 F.2d 350, the Ninth Circuit Court of Appeals was confronted with facts strikingly similar to those before us here. In *Smith*, on the second day of trial, the court learned that a juror's mother had suffered a stroke and that the juror had been with her mother at the hospital until very late at night and, consequently, was unable to return to the trial. The court had neglected to select an alternate. The defendant refused to proceed with fewer than twelve jurors and there was no indication that the trial court, which *sua sponte* declared a mistrial, considered the possibility of a continuance. The Ninth Circuit noted that while a trial court is not required to make an explicit finding of manifest necessity or to articulate on the record all the factors which informed its discretion, *Arizona v. Washington* (1978), 434 U.S. 497, 516-17, 98 S.Ct. 824, 835-36, 54 L.Ed.2d 717, 734-35, the record gave no indication that the trial court even considered the possibility of a continuance before ordering a mistrial. Even though, as a general rule, the unavailability of an irreplaceable juror makes a mistrial manifestly necessary, *see Oelke v. United States* (9th Cir. 1967), 389 F.2d 668, 671, the court in *Smith* held that, since the trial court did not consider a continuance of the trial as an obvious alternative to the mistrial, it could not say that there was "manifest necessity" to terminate the trial at that time. *Smith*, 621 F.2d at 351. When a court, in the absence of manifest necessity, declares a mistrial without the defendant's consent, the double jeopardy clause forbids retrial. *See generally United States v. Sanders* (9th Cir. 1979), 591 F.2d 1293, 1296-99. Having found no manifest necessity and that Smith did not expressly request a mistrial, the court in *Smith* thus turned to the question of whether Smith, by statements or silences, impliedly consented to the mistrial. In reviewing the record, the court determined that Smith's counsel did not object to the order of mistrial, despite adequate opportunity to do so. When the eleven jurors arrived at the courtroom

the trial court asked counsel "[D]o you mind if we bring the jury in ... and excuse them?" Smith's counsel answered, "That is fine."

These items show that defense counsel not only did not object to the order of mistrial, but affirmatively indicated his understanding that there could and would be a retrial. This is enough to constitute implied consent. Because Smith, through counsel, impliedly consented to the mistrial, and the need for the mistrial did not arise from any prosecutorial or judicial overreaching, the double jeopardy clause does not bar retrial. See *Lee v. United States*, 432 U.S. 23, 32, 97 S.Ct. 2141, 2146, 52 L.Ed.2d 80 (1977). *Smith*, 621 F.2d at 352.

In the present case, the record militates even more strongly in favor of a retrial. Unlike the *Smith* court, the trial court here, did explore alternatives (continuance of the trial, proceeding with fewer than twelve jurors, selecting a new juror to replace the absent juror) before declaring a mistrial. Thus the record would support a finding of manifest necessity for a mistrial. However, the question of manifest necessity need only be addressed if the court declares a mistrial without the defendant's consent. *Dinitz*, 424 U.S. at 607, 96 S.Ct. at 1079-80. Here, the District Court first explored the possibility of continuing the trial until the juror could return. When that option did not work, the following colloquy transpired between the court and counsel:

THE COURT: So our option, as I see it, unless I hear an idea from somebody else, declare a mistrial and begin again on the 22nd, start over, or call in the three alternates, pick the people that were left as the alternate pool, examine them and proceed. I don't know that maybe we should call them. I'm thinking out loud. I don't know that we shouldn't call in even more. This has never happened. So this is my suggestion. We call in those three people, see what we can do, or start again on the 22nd.

DEFENSE COUNSEL: I ask we declare a mistrial.

STATE: Pardon me.

DEFENSE COUNSEL: I would ask that we declare a mistrial. On the 22nd I would be available.

Following this discussion, the court inquired of defense counsel as to whether he would consent to the 19th of July as a new trial date. Counsel stated that he reserved any objections and that he would not stipulate. He reiterated a number of times that he was available on the 22nd of July. Ultimately, the court declared a mistrial and set the

matter for July 22nd. Although the court inquired whether there was anything further from counsel, there was no objection from defense counsel as to this procedure.

The record is clear that Keating requested this mistrial and that he did not object to the court's granting a mistrial and scheduling a new trial on July 22. Keating, however, argues (1) he had no realistic choice but to request a mistrial, and (2) his subsequent request for an evidentiary hearing on the question of "manifest necessity" should have been honored. We find no merit to either of these contentions.

In a case such as this where the defendant makes a request for a mistrial, the question becomes one of whether he was truly free to make the request or whether it was mandated by prosecutorial or judicial overreaching. *Dinitz*, 424 U.S. at 609, 96 S.Ct. at 1080. Although Keating has suggested that, in reality, he did not have any choice but to request a mistrial, he does not contend that he was "goaded" into the choice as a result of prosecutorial or judicial over-reaching. The mere fact that a defendant may have felt compelled to ask for the mistrial alternative does not necessarily mean that he can then claim double jeopardy. *United States v. McKoy* (9th Cir. 1996), 78 F.3rd 446, 450.

Furthermore, his contention that he had no real alternative rings hollow. The court presented at least two viable alternatives: stipulating to a jury of less than twelve, or calling in three more of the veniremen and selecting a new juror. Keating rejected both of these options and moved for mistrial with a new trial setting.

After this Court stayed the trial setting and remanded for consideration of the double jeopardy issue, Keating requested an evidentiary hearing on the question of manifest necessity. This request came too late. It was obviated by the fact that Keating's counsel had already requested a mistrial and had failed to object when the court declared a mistrial. In order to be of any effect, Keating should have raised the issue on July 9, 1996, before the court dismissed the jury. *See Scott v. United States* (D.C.Cir. 1952), 202 F.2d 354, 355-56, *cert. denied,* 344 U.S. 879, 73 S.Ct. 176, 97 L.Ed.2d 681, in which counsel was faulted for failing to object during the interlude between the order of mistrial and the actual dismissal of the jurors, after which it was "too late for his objection to be effective." By the time Keating filed his Petition for Writ of Habeas Corpus with this Court on August 5, 1996, the question was further mooted by the fact that, since the second jury panel had been empaneled and sworn, jeopardy had already attached a second time. Thus, the only justiciable issue at

that juncture would have been triple jeopardy. Furthermore, as we have previously pointed out, the question of manifest necessity does not even become an issue when defense counsel requests the mistrial and does not contend that counsel was "goaded" into the request because of prosecutorial or judicial overreaching.

We hold that Keating was not entitled to an evidentiary hearing on the question of manifest necessity and that a mistrial declared at his request and for reasons not attributable to judicial or prosecutorial overreaching was not a barrier to reprosecution. *Dinitz*, 424 U.S. at 607, 96 S.Ct. at 1079-80; *United States v. Jorn* (1971), 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543.

DATED this 10th day of September, 1996

CHIEF JUSTICE TURNAGE, JUSTICES HUNT, NELSON, TRIEWEILER and GRAY concur.