
DA 07-0275 and DA 07-0412

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 115

STATE OF MONTANA,

     Plaintiff and Appellant,

v.

JAMES JOSEPH BROWN,

     Defendant and Appellee.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. BDC 1987-121
Honorable Julie Macek, Presiding Judge

and

District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDC 1995-265
Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Hon. Mike McGrath, Montana Attorney General, Diana L. Koch, Chief
Legal Counsel, Colleen E. Ambrose, Special Assistant Attorney General,
Helena, Montana

    For Appellee:

        Jim Wheelis, Chief Appellate Defender, Joslyn Hunt, Assistant Appellate
Defender, Helena, Montana

Submitted on Briefs:  March 5, 2008

Decided:  April 9, 2008

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 The Montana Department of Corrections ("DOC") appeals from two orders entered in the District Court for the Eighth Judicial District, Cascade County. The first order was entered April 6, 2007, under cause number CDC-95-265. The second order was entered June 6, 2007, under cause number BDC-87-121. In these two orders, the District Court ordered the DOC to cease garnishing James Joseph Brown's prison wages to fulfill the restitution obligations that had been imposed as part of his sentences under each cause number. In addition, the court ordered the DOC to reimburse Brown for any monies already collected to satisfy the restitution obligations, except for sums collected prior to the discharge of the two sentences on February 28, 2001. We have consolidated the DOC's appeals in our Cause Nos. DA 07-0275 (corresponding with CDC-95-265) and DA 07-0412 (corresponding with BDC-87-121), and we now reverse both orders.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 In BDC-87-121, Brown pleaded guilty on September 17, 1987, pursuant to a plea agreement, to three counts of felony theft, one count of felony theft (accountability), one count of misdemeanor theft, one count of felony burglary, and two counts of misdemeanor trespass to vehicles. These offenses were committed in April and May 1987. The District Court sentenced Brown on October 28, 1987. In addition to multiple terms of incarceration in the Montana State Prison ("MSP"), some consecutive and some concurrent, totaling 20 years with 10 years suspended, the court also ordered Brown to pay restitution in the amount of $4,765.85. On November 7, 1995, the court revoked Brown's suspended sentence and sentenced him to serve the remainder of his time at

2

MSP. In addition, the court ordered that he pay the restitution previously set in the amount of $4,765.85, if he was later released from confinement and placed on probation.

¶3 In CDC-95-265, Brown pleaded guilty on October 13, 1995, pursuant to a plea agreement, to deceptive practices, a felony. This offense was committed in September 1994. The District Court sentenced him on November 11, 1995, to five years in MSP, to run concurrently with the sentence imposed in BDC-87-121. The court also ordered Brown to pay restitution in the amount of $1,600.00.

¶4 Brown completed his prison terms, with credit for good time, on February 28, 2001. On that date, the DOC issued him a document, titled "Notice of Discharge" and signed by the MSP warden, which stated as follows:

> James Joseph Brown has this day received his full and complete discharge from this institution, having fulfilled all the requirements imposed upon him by the laws of the State of Montana. Under section 46-18-801 MCA, you are restored to all civil rights and full citizenship. However, this discharge and restoration of civil rights may not effect [sic] any federal law in existence, or any civil rights lost as provided by 45-8-313, MCA.

According to the DOC, Brown had paid a total of $75.00 to his restitution obligation in BDC-87-121 and $35.00 to his restitution obligation in CDC-95-265 at the time of his discharge.

¶5 The DOC states that Brown was again placed under its supervision and control on December 21, 2004, following his conviction of other criminal offenses. In June 2005, as a condition of his participation in a prerelease program, he was required to make payments on any outstanding restitution obligations. Ultimately, while he was in the prerelease program, he paid another $340.00 in BDC-87-121 and $70.00 in CDC-95-265.

3

¶6 In June 2006, Brown was again sentenced to MSP. Thereafter, the DOC began garnishing his prison wages to satisfy his restitution obligations in BDC-87-121 and CDC-95-265. The DOC states that it has, thus far, withheld from his prison wages $24.60 in BDC-87-121 and $24.63 in CDC-95-265.

¶7 On January 10, 2007, Brown filed a motion in the District Court titled Motion for Entry of Order to Waive Payment of Restitution and for Return of Collected Funds. He asserted that he discharged his sentences in both BDC-87-121 and CDC-95-265 on February 28, 2001, and that the DOC lacked authority to garnish his prison wages for purposes of paying off his restitution obligations under these discharged sentences. The DOC filed a response opposing the motion.

¶8 The District Court agreed with Brown and granted his motion. Using substantially the same reasoning in both orders, the District Court reasoned that because the Notice of Discharge issued to Brown by the DOC stated that he had "fulfilled all the requirements imposed upon him by the laws of the State of Montana" and had "received his full and complete discharge," he no longer had an existing or unpaid restitution obligation for which the DOC could garnish his prison wages. Accordingly, the court ordered the DOC to cease garnishing Brown's wages for purposes of paying the restitution ordered as part of the sentences in BDC-87-121 and CDC-95-265 and, further, to reimburse Brown for any monies already collected to satisfy those restitution obligations, with the exception of the sums collected prior to February 28, 2001.

¶9 The DOC now appeals.

**ISSUES**

¶10 The DOC claims that the District Court erred in ordering it to cease garnishing Brown's prison wages and to return the funds it has already collected since March 1, 2001. To resolve this issue, we must address the following two questions:

1. Do the restitution obligations imposed on the sentences in BDC-87-121 and CDC-95-265 still exist?

2. If the restitution obligations still exist, is the DOC authorized to take a percentage of Brown's prison wages and other money in his DOC account for purposes of paying down these obligations?

## STANDARD OF REVIEW

¶11 The District Court's ruling on Brown's Motion for Entry of Order to Waive Payment of Restitution and for Return of Collected Funds constituted a conclusion of law. We conduct plenary review of a district court's conclusion of law to determine whether the conclusion is correct. *City of Billings v. Gonzales*, 2006 MT 24, ¶ 6, 331 Mont. 71, ¶ 6, 128 P.3d 1014, ¶ 6.

## DISCUSSION

¶12 ***1. Do the restitution obligations imposed on the sentences in BDC-87-121 and CDC-95-265 still exist?***

¶13 The DOC presents the following argument that the restitution obligations imposed on the sentences in BDC-87-121 and CDC-95-265 still exist. First, the DOC contends that a court order to pay restitution is a civil judgment. The DOC points out that ever since its enactment in 1983, § 46-18-247(3), MCA, has provided that "[a]n order to pay restitution constitutes a judgment rendered in favor of the state, and following a default in

5

the payment of restitution or any installment [of restitution], the sentencing court may order the restitution to be collected by any method authorized for the enforcement of other judgments." The DOC also cites our decision in *State v. Field*, 2005 MT 181, 328 Mont. 26, 116 P.3d 813, where we observed that "restitution 'is not a criminal punishment but instead is a civil remedy administered for convenience by courts that have entered criminal convictions.' " *Field*, ¶ 29 (quoting *United States v. George*, 403 F.3d 470, 473 (7th Cir. 2005)).

¶14     Second, the DOC contends that a court order to pay restitution, as a civil judgment, does not simply "evaporate" when the offender discharges his sentence; rather, it survives the discharge and remains with the offender until it is fully satisfied. As support for this position, the DOC directs our attention to the 1997 amendment to § 46-18-241(1), MCA. At that time, the Legislature inserted the following emphasized language into the statute:

> As provided in 46-18-201, a sentencing court shall require an offender to make *full* restitution to any victim of the offense who has sustained pecuniary loss as a result of the offense, including a person suffering an economic loss as a result of the crime. *The duty to pay full restitution under the sentence remains with the offender until full restitution is paid.*

*See* Laws of Montana, 1997, ch. 181, § 2. Furthermore, the DOC points out that in 2001, the Legislature inserted the following sentence into § 46-18-249(1), MCA: "The total amount that a court orders to be paid to a victim may be treated as a civil judgment against the offender and may be collected by the victim at any time, including after state supervision of the offender ends, using any method allowed by law, including execution

6

upon a judgment, for the collection of a civil judgment." *See* Laws of Montana, 2001, ch. 284, § 2. The Legislature explicitly provided that the new language in § 46-18-249, MCA, applies retroactively to restitution ordered to be paid prior to October 1, 2001. *See* Laws of Montana, 2001, ch. 284, § 3. Although Brown had discharged his sentences under BDC-87-121 and CDC-95-265 on February 28, 2001, the DOC asserts that the amendment to § 46-18-249(1), MCA, simply affirmed the nature of a restitution order as a civil judgment.

¶15 Lastly, the DOC acknowledges that the law provides for relief from a court-imposed restitution obligation, but the DOC asserts that particular procedures must be followed to obtain such relief. Indeed, § 46-18-246, MCA, provides as follows:

> An offender may at any time petition the sentencing court to adjust or otherwise waive payment of any part of any ordered restitution. The court shall schedule a hearing and give a victim to whom restitution was ordered notice of the hearing date, place, and time and inform the victim that the victim will have an opportunity to be heard. If the court finds that the circumstances upon which it based the imposition of restitution, amount of the victim's pecuniary loss, or method or time of payment no longer exist or that it otherwise would be unjust to require payment as imposed, the court may adjust or waive unpaid restitution or modify the time or method of making restitution. The court may extend the restitution schedule.

The DOC points out that Brown failed to invoke, and the District Court failed to follow, these procedures.

¶16 In response, Brown does not dispute that restitution is a civil judgment, that one of the policies of the State of Montana is to provide restitution to victims, and that a statutory process exists by which an offender may obtain relief from a restitution obligation. However, Brown asserts that the restitution obligations imposed in

7

BDC-87-121 and CDC-95-265 were "fulfilled" and his sentences were "discharged" on February 28, 2001, and that the DOC had no authority to "revive" the obligations. Brown relies heavily, in this regard, on the statement in the DOC's Notice of Discharge that he "has this day received his full and complete discharge from this institution, having fulfilled all the requirements imposed upon him by the laws of the State of Montana." In addition, Brown points out that the restitution obligations imposed in BDC-87-121 and CDC-95-265 were not reinstated in his current sentence. Thus, according to Brown, "a court-imposed restitution obligation as to Cause No. CDC-95-265 and as to Cause No. BDC-87-121 no longer exists" and "the DOC has no authority upon which to withhold monies from Brown's account as he now serves out a different sentence."

¶17 The parties offer a number of definitions of the word "discharge"; however, we find those inapposite for resolving the question of whether the restitution obligations imposed on the sentences in BDC-87-121 and CDC-95-265 still exist. Whatever the DOC intended in the Notice of Discharge by the word "discharge," and whatever the DOC had in mind when it stated that "all the requirements" imposed upon Brown by the laws of the State of Montana have been "fulfilled," we cannot agree with the premise underlying Brown's argument that the DOC has the power to void, nullify, or otherwise relieve an offender of a court-ordered restitution obligation.

¶18 At the times the sentences were imposed in BDC-87-121 and CDC-95-265, § 46-18-247(3), MCA, stated that "[a]n order to pay restitution constitutes a judgment rendered in favor of the state, and following a default in the payment of restitution or any installment [of restitution], the sentencing court may order the restitution to be collected

8

by any method authorized for the enforcement of other judgments." Thus, unlike the other terms of Brown's sentences, the restitution obligations have always been, in substance, civil judgments. Furthermore, as amended by the Legislature in 1997, § 46-18-241(1), MCA, provided that "[t]he duty to pay full restitution under the sentence remains with the offender *until full restitution is paid*" (emphasis added). As the DOC now concedes in its reply brief on appeal, "neither Montana State Prison nor any other entity of state government has the authority to write rules, polices or notices that contravene Montana laws, which are established by the legislature, approved by the governor and interpreted by this Court."

¶19 Accordingly, we conclude that the restitution obligations imposed in BDC-87-121 and CDC-95-265 were not "discharged" or otherwise "fulfilled" on February 28, 2001, by virtue of the DOC's Notice of Discharge issued to Brown on that date.

¶20 ***2. Is the DOC authorized to take a percentage of Brown's prison wages and other money in his DOC account for purposes of paying down his restitution obligations?***

¶21 The DOC contends that it has authority to garnish Brown's prison wages by virtue of §§ 46-18-237 and -244(6)(a), MCA (2003). The former sets forth a procedural mechanism for requesting and obtaining a court order to garnish an offender's prison account for the payment of restitution. *See* § 46-18-237, MCA. The latter mandates that for a felony offense, "during any period that the offender is incarcerated, the department of corrections shall take a percentage, as set by department rule, of any money in any account of the defendant administered by the department and use the money to satisfy any existing restitution obligation." Section 46-18-244(6)(a), MCA.

9

¶22 Brown does not dispute DOC's authority under § 46-18-244(6)(a), MCA, but he contends that this authority extends only to restitution obligations that were "unpaid" on October 1, 2003. *See* Laws of Montana, 2003, ch. 272, § 10 (providing that the 2003 amendments to § 46-18-244, MCA, apply retroactively to offenders who have an unpaid restitution obligation on October 1, 2003). Brown then reiterates his position that the restitution obligations imposed in BDC-87-121 and CDC-95-265 were discharged on February 28, 2001, and that the DOC had no authority to "revive" them. We reject this argument for the reasons discussed above.

¶23 Alternatively, Brown asserts that even if his restitution obligations in BDC-87-121 and CDC-95-265 still exist, "the manner in which the DOC is attempting to collect [them] is incorrect." Brown asserts that because court-ordered restitution is a "civil" judgment, the DOC is required to enforce this judgment "through civil means." *See* Title 25, Chapter 13, MCA. Brown suggests that the DOC's authority to garnish his prison wages under § 46-18-244(6)(a), MCA, exists only with respect to the specific sentence he is presently serving. He asks this Court to hold that under § 46-18-244(6)(a), MCA, "the felony offense upon which the DOC can take monies is the felony offense for which the offender is currently incarcerated, and certainly is not the felony offense for which there has been a discharge and no reinstatement of the restitution obligation."

¶24 We decline to adopt Brown's reading of § 46-18-244(6)(a), MCA. We held above that the restitution obligations imposed in BDC-87-121 and CDC-95-265 survived the discharge of Brown's sentence on February 28, 2001, and still exist. Under § 46-18-244(6)(a), MCA, the DOC "shall," during any period that Brown is incarcerated,

"take a percentage, as set by department rule, of any money in any account of the defendant administered by the department and use the money to satisfy *any existing restitution obligation*" (emphasis added). Nothing in this language suggests that the Legislature intended to limit the DOC's authority—indeed, its obligation—to collect unpaid restitution to just "the felony offense for which the offender is currently incarcerated." Indeed, Brown's argument contravenes the Legislature's clear intent, as reflected in the statutory amendments discussed above, to facilitate the fulfillment of restitution obligations and to provide the State and victims with a means of enforcing court-ordered restitution.[1] To hold, as Brown suggests, that "any existing restitution obligation" as used in § 46-18-244(6)(a), MCA, applies only to "the felony offense for which the offender is currently incarcerated" would be to read into the statute a meaning which simply is not there. This Court will not engage in such redrafting of a plain and unambiguous statute. *See* § 1-2-101, MCA ("In the construction of a statute, the office of

---

[1] Although an order to pay restitution constitutes a judgment rendered "in favor of the state" which may be collected "by any method authorized for the enforcement of other judgments," § 46-18-247(3), MCA, it also may be collected by the victim, § 46-18-249(1), MCA. Furthermore, during any period that the offender is incarcerated, the DOC is required to collect on any existing restitution obligation and use the collected money "to satisfy [that] obligation." Section 46-18-244(6)(a), MCA. Likewise, the Department of Revenue is required to intercept any state tax refunds and any federal tax refunds due the offender and, if a felony offense, to transfer the money to the DOC "for disbursement to the victim." Section 46-18-244(7), MCA. The DOC, in turn, is required to "pay the restitution to the person or entity to whom the court ordered restitution to be paid." Section 46-18-241(2)(b), MCA. Thus, the scheme created by the Legislature seems to contemplate that while the restitution judgment is in favor of the State, the State's role is to enforce and collect that judgment on the victim's behalf. Alternatively, the victim may independently enforce the judgment. How this unique scheme fits within the law pertaining to the enforcement of civil judgments generally is not before us.

11

the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted.").

¶25 We conclude that the DOC is authorized to take a percentage of Brown's prison wages and other money in his DOC account for purposes of paying down his restitution obligations in BDC-87-121 and CDC-95-265.

## CONCLUSION

¶26 For the foregoing reasons, we hold that the restitution obligations imposed on the sentences in BDC-87-121 and CDC-95-265 still exist and that the DOC is authorized to take a percentage of Brown's prison wages and other money in his DOC account for purposes of paying down these obligations. Therefore, the District Court erred in ordering the DOC to cease garnishing Brown's prison wages and to return the funds it has already collected since March 1, 2001.

¶27 The District Court's orders in BDC-87-121 and CDC-95-265 are, accordingly, reversed.

/S/ JAMES C. NELSON

We Concur:

/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ JIM RICE
/S/ BRIAN MORRIS