DA 12-0492

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 188

STATE OF MONTANA,

  Plaintiff and Appellee,

v.

CURTIS DONALD CLINE,

  Defendant and Appellant.

APPEAL FROM: District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. CDC 2011-306
Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

  For Appellant:

    Wade Zolynski, Chief Appellate Defender; Koan Mercer, Assistant Appellate
Defender, Helena, Montana

  For Appellee:

    Timothy C. Fox, Montana Attorney General; Mardell Ployhar, Assistant
Attorney General, Helena, Montana

    Leo J. Gallagher, Lewis and Clark County Attorney; Melissa Broch, Deputy
County Attorney, Helena, Montana

Submitted on Briefs: March 13, 2013
Decided: July 15, 2013

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 The State of Montana (State) charged Curtis Cline (Cline) with theft by common scheme, in violation of § 45-6-301(a), MCA. Cline filed a motion to dismiss the charge. Cline argued that the charge violated his right not to be subject to double jeopardy under § 46-11-504, MCA. The District Court denied Cline's motion to dismiss. Cline appeals. We affirm.

¶2 Cline presents the following issue on appeal:

¶3 *Whether the theft by common scheme charge subjected Cline to double jeopardy?*

## PROCEDURAL AND FACTUAL BACKGROUND

¶4 Cline stole numerous firearms and other merchandise from his employer, Bob Ward & Sons, between December 2010 and June 2011. The United States charged Cline with theft of firearms from a federal licensee, in violation of 18 U.S.C. § 922(u), and possession of stolen firearms, in violation of 18 U.S.C. § 922(j). Cline entered a guilty plea to these federal charges.

¶5 The State separately charged Cline with the theft of the firearms and the non-firearm merchandise that Cline had stolen from Bob Ward & Sons. Cline filed a motion to dismiss for violation of his statutory double jeopardy rights. The State amended its complaint to include only the non-firearm merchandise. Cline argued that this amendment did not cure the double jeopardy violation. The District Court denied the motion to dismiss. Cline entered a conditional guilty plea that preserved his right to appeal the District Court's denial of his statutory double jeopardy motion to dismiss.

2

## STANDARD OF REVIEW

¶6     A district court's decision to grant or deny a defendant's motion to dismiss a charge on the basis of double jeopardy presents a question of law that we review for correctness. *State v. Neufeld*, 2009 MT 235, ¶ 10, 351 Mont. 389, 212 P.3d 1063.

## DISCUSSION

¶7     *Whether the theft by common scheme charge subjected Cline to double jeopardy?*

¶8     Section 46-11-504(1), MCA, sets forth Montana's statutory protection against double jeopardy. This statute provides that when conduct constitutes an offense within a different jurisdiction, a prosecution in that different jurisdiction bars a subsequent prosecution in Montana for an offense that arose out of the same transaction. We have interpreted this statute as providing criminal defendants with greater protection against double jeopardy than the United States Constitution. *State v. Cech*, 2007 MT 184, ¶ 13, 338 Mont. 330, 167 P.3d 389.

¶9     We apply a three part test to determine whether double jeopardy bars a subsequent prosecution. *State v. Fox*, 2012 MT 172, ¶ 19, 336 Mont. 10, 285 P.3d 454. We look first to whether the defendant's conduct constitutes an equivalent offense within the jurisdiction of the court where the first prosecution occurred and within the jurisdiction of the court where the subsequent prosecution is pursued. We next look at whether the first prosecution resulted in an acquittal or a conviction. Finally, we look at whether the second jurisdiction based the subsequent prosecution on an offense that arose from the same transaction. All three factors must be met to bar a subsequent prosecution. *Fox*, ¶ 19.

3

¶10     The State admits that Cline's first prosecution resulted in a conviction. The State further admits that it based the subsequent prosecution on an offense that arose out of the same transaction as Cline's federal prosecution. We must determine, therefore, whether Cline's conduct constitutes an equivalent offense within both jurisdictions.

¶11     We described the equivalent offense requirement in *Fox*. "[T]he same conduct must subject a defendant to the possibility that he could be convicted of an 'equivalent offense' in each jurisdiction." *Fox*, ¶ 21. The two offenses need not be identical to be considered equivalent. Further, the equivalent offense requirement can be met even if the defendant is not charged with the offense in both jurisdictions. A defendant can meet the equivalent offense requirement as long as his conduct constitutes "an equivalent offense in both jurisdictions." *Fox*, ¶ 21.

¶12     Cline's conduct resulted in two distinct types of offenses: theft of firearms and theft of non-firearm items. Theft of firearms qualifies as an equivalent offense as it constitutes an offense under both federal and Montana law. *See* 18 U.S.C. § 922(u); § 45-6-301(a), MCA. Cline argues that the fact that one of his offenses constitutes an "equivalent offense" should bar the subsequent prosecution for any of the other offenses that he committed as part of that same transaction. The State counters that the equivalent offense requirement should be offense specific. The State admits that theft of firearms represents an equivalent offense under federal and state law, and, therefore, it cannot prosecute Cline for theft of the firearms. The State argues, however, that Cline's theft of the non-firearm items does not represent an

4

equivalent offense. The State points out that the United States could not have prosecuted Cline for the non-firearm related offenses.

¶13 We have considered whether double jeopardy bars a subsequent prosecution when multiple offenses arise out of the same conduct. When the first jurisdiction could prosecute a defendant for both offenses, but chooses to prosecute only one offense, the second jurisdiction cannot then prosecute the second offense. For example, the State of Washington successfully prosecuted Casey Cech (Cech) for possession of stolen property. *Cech*, ¶ 5. Cech had stolen a vehicle in Montana and had driven the vehicle to Washington. Montana later attempted to prosecute Cech for theft of the vehicle. We determined that Washington law included an "equivalent offense" to theft of the vehicle. We further determined that Washington could have prosecuted Cech for theft of the vehicle when it prosecuted Cech for possession of the stolen vehicle. Washington's exercise of its prosecutorial discretion not to prosecute Cech for theft of the vehicle barred Montana under double jeopardy principles from prosecuting Cech separately for theft of the vehicle. *Cech*, ¶ 18.

¶14 Double jeopardy does not bar prosecution of two separate offenses in the two jurisdictions when a defendant's conduct constitutes an offense in one jurisdiction and a separate offense in a second jurisdiction. John Gazda (Gazda) shot and killed Bronson Smith in Montana. *State v. Gazda*, 2003 MT 350, ¶ 2, 318 Mont. 516, 82 P.3d 20. The United States charged Gazda, a felon, with possession of a weapon and possession of ammunition. *Gazda*, ¶ 2. Montana later charged Gazda with deliberate homicide. *Gazda*, ¶ 3. Montana's prosecution did not violate Gazda's right against double jeopardy. The United States did not

have authority to prosecute Gazda for deliberate homicide. No equivalent offense existed under federal law that would capture Gazda's misconduct. As a result, double jeopardy did not bar Montana from prosecuting Gazda for deliberate homicide. *Gazda*, ¶ 17.

¶15 Cline argues that double jeopardy bars a second prosecution when any overlap of jurisdiction exists. Cline points out that Montana could not have prosecuted Gazda for having been a felon in possession and that the United States could not have prosecuted Gazda for homicide. Cline argues that this lack of overlap underpinned the Court's conclusion that double jeopardy did not bar Montana's subsequent prosecution. Cline contends that Montana could not have prosecuted Gazda for homicide if Montana had an equivalent offense to felon in possession.

¶16 Cline cites *State v. Sword*, 229 Mont. 370, 747 P.2d 206 (1987), to support his interpretation of the equivalent offense requirement. Phil Sword (Sword) shot and killed a grizzly bear in the Great Bear Wilderness in Montana. Both federal and state law banned the shooting of grizzly bears in the Great Bear Wilderness. Sword obtained a trophy license in Montana by stating falsely that he had shot the bear in the Bob Marshall Wilderness, which was open to grizzly bear hunting at the time. An informant alerted authorities that Sword had lied on his trophy license and that Sword actually had shot the grizzly bear in the Great Bear Wilderness. The United States prosecuted Sword for violation of the Endangered Species Act for having shot the grizzly bear. *Sword*, 229 Mont. at 371, 747 P.2d at 207. Montana later sought to prosecute Sword for having made a material misstatement on the

6

trophy license. The Court determined that such a prosecution would submit Sword to double jeopardy. *Sword*, 229 Mont. at 376, 747 P.2d at 210.

¶17 Cline argues that the issue of whether any equivalent offense existed that arose out of the same transaction distinguishes the outcomes in *Sword* and *Gazda*. No equivalent offense existed in *Gazda*. Montana did not criminalize felon in possession and the United States did not criminalize homicide. An equivalent offense existed in *Sword*. Both the United States and Montana criminalized the taking of an endangered species. Cline argues that *Sword* demonstrates that when any equivalent offense exists, Montana cannot charge any other offense that may have arose out of the same transaction, even if the second offense does not represent an equivalent offense.

¶18 Cline misplaces reliance on *Sword*. The United States prosecuted Sword for knowingly having possessed and transported an unlawfully taken grizzly bear. The "knowingly" mental state proved essential to the United States' prosecution. *See United States v. St. Onge*, 676 F. Supp. 1044, 1045 (Dist. Mont. 1988) (discussing evidence relevant to "knowingly" element of taking a grizzly bear). Sword's misstatement on the trophy license represented proof that he had knowledge that he unlawfully had taken the grizzly bear by shooting it in the Great Bear Wilderness rather than in the Bob Marshall Wilderness. Sword's misstatement on the trophy license formed the basis of his first conviction. Indeed, the federal prosecutor told the federal court that the United States had based its charges on Sword's misstatement that he had taken the bear in the Great Bear Wilderness rather than in the Bob Marshall Wilderness. This Court noted that "when Mr. Sword killed the bear,

7

transported it from the mountain, made false statements on the trophy application, and stored the hide, his conduct was a violation of 16 U.S.C. Section [1538](a)(1)(G) in that he possessed, carried, and transported a grizzly bear taken unlawfully." *Sword*, 229 Mont. at 373-74, 747 P.2d at 208. To subject Sword to a second prosecution for his misstatement on the trophy license would have placed him in jeopardy twice and punished him twice for the same offense. *Sword*, 229 Mont. at 376, 747 P.2d at 210.

¶19 Cline's theft of non-firearm items, in contrast, did not form the basis of his conviction for theft of firearms. Cline never has been punished, or put in jeopardy, for his theft of the non-firearm items. Further, Cline's interpretation of the equivalent offense requirement would make Montana's double jeopardy protection dependent on what conduct Montana criminalizes, rather than on whether a defendant previously had been put in jeopardy for his offense. As applied to the facts of this case, Cline argues that the State could prosecute Cline for his theft of non-firearm items only if it did not criminalize the theft of firearms. Thus, under Cline's reasoning, Montana's decision to criminalize the theft of firearms would leave Montana unable to prosecute Cline for the theft of non-firearm items.

¶20 The proper application of Montana's double jeopardy law does not depend on whether Montana chooses to criminalize conduct for which another jurisdiction already has charged a defendant. Montana's double jeopardy law instead focuses on whether a defendant already has been put in jeopardy for an offense equivalent to the offense with which Montana now charges him. Washington could have prosecuted Cech for theft of the vehicle, as well as possession of the stolen vehicle. Washington chose to charge Cech only with possession of

8

the stolen vehicle. Washington's exercise of prosecutorial discretion placed Cech in a position in which double jeopardy barred Montana later from charging Cech for theft. *Cech*, ¶ 18. The United States made no calculated decision whether to prosecute Gazda for homicide. The United States did not prosecute Gazda for the homicide due to the fact that it lacked jurisdiction over the offense of homicide. Montana's prosecution of Gazda for homicide posed no double jeopardy bar. *Gazda*, ¶ 17.

¶21 Cline next asks this Court to overrule our interpretation of § 46-11-504, MCA. This Court has required the offense prosecuted in the first jurisdiction and the offense to be prosecuted in Montana to be "equivalent" offenses. *See Fox*, ¶ 21; *Cech*, ¶ 17; *Gazda*, ¶ 14. Cline argues that the legislature did not include the "equivalent" offense requirement in the statute. Cline contends that this Court should not require an "equivalent offense," but rather double jeopardy should preclude a second prosecution if a defendant has been prosecuted for any offense that arose out of the same transaction.

¶22 We declined to adopt this interpretation in *Cech*. *See Cech*, ¶ 28 (Nelson, J., concurring). We again decline to adopt this interpretation of § 46-11-504, MCA. We presume that the legislature is aware of our decisions interpreting this statute. *Fox*, ¶ 21; *Cech*, ¶ 17; *Gazda*, ¶ 14. We further presume that if the legislature disagreed with the interpretation set forth in our decisions, it would have amended the statute accordingly. *See Musselshell Ranch Co. v. Seidel-Joukova*, 2011 MT 217, ¶ 14, 362 Mont. 1, 261 P.3d 570.

¶23 The United States prosecuted Cline for his theft of firearms from Bob Ward & Sons. The United States lacked jurisdiction to prosecute Cline for his theft of non-firearm items

from Bob Ward & Sons. No equivalent offense existed under federal law. Cline never has been subject to jeopardy for theft of the non-firearm items. Montana's protection against double jeopardy does not bar the State's prosecution of Cline for his theft of non-firearm items under these circumstances.

¶24   Affirmed.

/S/ BRIAN MORRIS

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ JIM RICE

Justice Patricia O. Cotter dissents.

¶25   I dissent from the Court's decision. I would conclude that under the clear language of § 46-11-504, MCA, Cline's conviction in federal court barred his subsequent prosecution in the District Court.

¶26   Section 46-11-504, MCA, provides in pertinent part:

When conduct constitutes an offense within the jurisdiction of any state or federal court, a prosecution in any jurisdiction is a bar to a subsequent prosecution in this state if:
        (1) the first prosecution resulted in an acquittal or in a conviction and the subsequent prosecution is based on an offense arising out of the same transaction . . . .

10

¶27 We err in interpreting the foregoing statute to require that the offense prosecuted in the first jurisdiction and the offense to be prosecuted in Montana must be "equivalent" offenses. *See* ¶ 21. Our error dates back to the 1993 version of § 46-11-504, MCA, which was in effect when we decided *State v. Tadewaldt*, 277 Mont. 261, 922 P.2d 463 (1996). Unfortunately, we have perpetuated the *Tadewaldt* test, notwithstanding the fact that § 46-11-504, MCA, was substantively revised in 1997.

¶28 As Justice Nelson cogently pointed out in his concurring Opinion in *State v. Cech*, 2007 MT 184, 338 Mont. 330, 167 P.3d 389, there is absolutely no language in the double jeopardy statute, as revised, which imposes the requirement that the offenses in question be "equivalent." *Cech*, ¶ 34 (Nelson, J., concurring). The statute very plainly requires that "an offense" be prosecuted in the first jurisdiction, that there be an acquittal or conviction, and that the subsequent prosecution be based upon "an offense arising out of the same transaction." The straightforward language of the revised statute could not be clearer.

¶29 Given the clarity of the statutory language in question, it is unnecessary to consult the legislative history, to which we typically resort "only if legislative intent cannot be determined from the plain wording of the statute." *Clarke v. Massey*, 271 Mont. 412, 416, 897 P.2d 1085, 1088 (1995). Here, however, the legislative history of the 1997 revisions is instructive. SB 145 was introduced with the following preamble: "WHEREAS, the Montana Supreme Court has suggested in *State v. Pierce*, 199 Mont. 57 (1982), *State v. Sword*, 229 Mont. 370, and *State v. Tadewaldt*, 53 St. Rep. (1996), that the concurrent jurisdiction provisions of section 46-11-504, MCA, be clarified." Thus, it is clear that the

11

Legislature was aware of our interpretations of the previous version of the statute, and specifically intended a modification of the statute in response to those cases. Had the Legislature intended that the test applied in *Tadewaldt* be perpetuated, it would not have taken the trouble to revise the language of the statute. "The legislature does not perform useless acts. Section 1-3-223, MCA." *American Linen Supply Co. v. Dept. of Revenue*, 189 Mont. 542, 545, 617 P.2d 131, 133 (1980).

¶30    I authored the Court's Opinion in *State v. Fox*, 2012 MT 172, 366 Mont. 10, 285 P.3d 454. Although the portion of the analysis in *Fox* that invoked *Tadewaldt* is not critical to the outcome of our decision there, we erred in *Fox* in continuing to rely upon *Tadewaldt*. We similarly erred in doing so in *State v. Gazda*, 2003 MT 350, 318 Mont. 516, 82 P.3d 20. *See Gazda*, ¶¶ 14, 21. I therefore agree with Justice Nelson's conclusion in *Cech* that to the extent that *Gazda* relies upon *Tadewaldt,* it should be overturned. I would further urge us to overturn *Fox* and *Cech* to the same limited extent. *Cech*, ¶ 39.

¶31    The foregoing Opinions having embraced the "equivalent offense" standard, it might fairly be asked why this "plain language" analysis is just now being interposed in a dissent. The answer is that Cline is the first of these defendants to squarely present this argument, and we are therefore bound to consider it. Justice Nelson's concurrence in *Cech* raised the exact point I raise here, but Cech himself did not challenge application of the *Tadewaldt* test. Justice Nelson concluded that the *Tadewaldt* test did not square with the language of the statute, but he otherwise concurred with the Court's conclusion on other grounds that the subsequent prosecution of Cech in Montana was barred.

¶32 Turning to the matter before us, and applying the plain language of § 46-11-504, MCA, Cline's conviction of theft by common scheme cannot stand. As the Court correctly notes at ¶ 10, the State admits that Cline's federal prosecution resulted in a conviction, and that the subsequent prosecution at issue here arose out of the same transaction as Cline's federal prosecution. These two admissions end the inquiry, as the statute requires only that the conduct constitutes an offense within the other court, that the prosecution in the other court result in a conviction, and that the subsequent prosecution be "based on an offense arising out of the same transaction." Section 46-11-504(1), MCA.

¶33 This Court has repeatedly invoked § 1-2-101, MCA, which provides that "[i]n the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." *City of Bozeman v. Cantu*, 2013 MT 40, ¶ 17, 369 Mont. 81, 296 P.3d 461; *In re D.B.J.*, 2012 MT 220, ¶ 40, 366 Mont. 320, 286 P.3d 1201; *State v. Hafner*, 2010 MT 233, ¶ 24, 358 Mont. 137, 243 P.3d 435; *State v. Maki*, 2008 MT 379, ¶ 17, 347 Mont. 24, 196 P.3d 1281; *State v. Brown*, 2008 MT 115, ¶ 24, 342 Mont. 476, 182 P.3d 75. The Court disregards this statute by reading into the current version of our double jeopardy statute language which it does not contain. If the State disagrees with the clear language of our current version of § 46-11-504, MCA, then the State should ask the Legislature to change the statute. It is not up to this Court to do so.

¶34 I therefore dissent from the Court's Opinion.

13

/S/ PATRICIA COTTER

Justice Laurie McKinnon joins in the Dissent of Justice Patricia O. Cotter.

/S/ LAURIE McKINNON