FILED

12/12/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0593

DA 15-0593

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 306

STATE OF MONTANA,

    Plaintiff and Appellee,

    v.

DAVID GARY BURTON,

    Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
                In and For the County of Lewis and Clark, Cause No. CDC 12-16
                Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Chad Wright, Chief Appellate Defender, James Reavis, Assistant Appellate
            Defender; Helena, Montana

        For Appellee:

            Timothy C. Fox, Montana Attorney General, Jonathan M. Krauss, Assistant
            Attorney General; Helena, Montana

            Leo Gallagher, Lewis and Clark County Attorney, Melissa Broch, Deputy
            County Attorney; Helena, Montana

                                Submitted on Briefs:  September 6, 2017

                                        Decided:  December 12, 2017

Filed:

                        _____
                                    Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 David Burton appeals the denial of his motion to dismiss charges under § 46-11-504(1), MCA, by the Montana First Judicial District Court, Lewis and Clark County. We affirm, and address the following issues:

1. *Can a defendant appeal the denial of a motion for dismissal under § 46-11-504(1), MCA, prior to the entry of a final judgment?*

2. *Did the District Court err by denying Burton's motion under § 46-11-504(1), MCA, to dismiss the charges of deceptive practices, burglary, and felony theft, given his federal conviction for possession of stolen firearms?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 The Lewis and Clark County Sheriff's Office and Helena Police Department connected Burton to a series of crimes that started in 2010 and culminated in December of 2011. Prosecutors alleged the following crimes were committed by Burton: On September 7, 2010, a Ruger .380 caliber pistol was stolen from Timothy Kosena's vehicle in the Helena Valley. On November 28, 2010, the Helena Valley home occupied by the McClain family was broken into and several items of value, along with personal documents, were taken. On February 5, 2011, owners reported that Jack and Jill Sports Memorabilia in downtown Helena was broken into, with merchandise and a cash register stolen. On October 5, 2011, a laptop computer and several tools were reported stolen from Glen Knudson's vehicle as it was parked in Helena or the Helena Valley. On November 16, 2011, the Helfert home in the Helena Valley was broken into and several items of value, including a Ruger .45 Colt revolver and a Llama pistol, were missing. On December 7, 2011, it was reported that jewelry was missing from the Mihelish home in the Helena

2

Valley. On December 8, 2011, in the middle the night, J.L., a 13-year-old girl, was abducted from her bedroom in the Helena Valley while her mother slept. She was driven to a remote area where she was sexually assaulted and then released on foot. The next day, December 9, 2011, the Corbally home in the Helena Valley was broken into and several valuables, including a Springfield 9 millimeter pistol, a Springfield .40 caliber pistol, a Ruger .45 caliber pistol, a Ruger 12 gauge shotgun, and a Rock River AR rifle, were stolen. On December 15, 2011, it was reported that Capital Jewelry and Loan was broken into and a Center Arms Galil rifle was stolen. The same day, the Davis home in the Helena Valley was broken into and several valuables, including a Ruger 9 millimeter pistol, were taken. Again the same day, the Roncalli home in the Helena Valley was broken into and several valuables and a credit card were missing. On December 17, 2011, it was reported that King Lewy's Auto Plaza in Helena was broken into, and it appeared that a van had been stolen and later returned. The credit card taken from the Roncalli home was used to fuel the stolen van. Later that night, Bowser's Casino in Helena was robbed at gunpoint. The same van was used as a get-away vehicle.

¶3 The Roncalli credit card was used at several other businesses, and using security camera footage, police were able to identify Burton and arrest him. Burton was first charged in January 2012, and as he was connected to additional crimes, charges were added. In July 2012, the state filed an amended information, stating 13 counts: (1) felony deceptive practices, common scheme (Roncalli); (2) burglary (Roncalli); (3) misdemeanor theft (Roncalli); (4) burglary (King Lewy's); (5) robbery (Bowser's); (6) felony theft

3

(Bowser's); (7) burglary (Corbally); (8) felony theft (Corbally); (9) burglary (J.L);

(10) aggravated kidnapping (J.L.); (11) sexual intercourse without consent (J.L.); (12)

felony theft (Davis, Capital Jewelry and Loan, Mihelish, Helfert, Knudson, Jack and Jill,

McClain, Kosena); and (13) alternatively to count twelve, felony theft for possession of

the stolen property.

¶4　In December 2012, federal prosecutors obtained an indictment against Burton for

four federal charges: (1) felon in possession of firearms; (2) possession of stolen firearms;

(3) robbery affecting commerce; and (4) utilization of a firearm during a crime of violence.

The federal indictment identified five guns as the basis for the charges: a Ruger .380

caliber pistol, a Ruger .45 caliber revolver, a Ruger 9 millimeter pistol, a Rock River rifle,

and a Galil rifle. The State's affidavit identified a Ruger .380 as being stolen from Kosena,

a Ruger .45 caliber revolver from Helfert, a Ruger 9 millimeter from Davis, a Rock River

rife from Corbally, and a Galil from Capital Jewelry.[1]

¶5　Shortly thereafter, the State, in consideration of § 46-11-504(1), MCA, filed a

second amended information "to remove from the [first amended] information []

transactions that are the subject of the federal indictment." The State removed counts four,

five, and six (the burglary of King Lewy's, and the robbery and theft of Bowser's Casino).

---

[1] The record reflects that both Helfert and Corbally had Ruger .45 caliber handguns stolen. The State identified Helfert's gun as a revolver, and the federal charges involving a Ruger .45 caliber handgun described it as a revolver, so we assume the federal charge involved Helfert's handgun. However, it is possible that Corbally's Ruger .45 caliber handgun was also a revolver, and that the federal charge referenced that handgun. This question does not impact our resolution of the issues raised here.

4

The state also removed the firearms from the list of property stolen from the Corballys and reduced count eight from felony theft to misdemeanor theft. Further, the State amended alternative counts twelve and thirteen to remove the victims from whom only firearms were stolen, and also removed all firearms from the lists of property stolen from other victims.[2] Thus, the second amended information stated charges of: (1) felony deceptive practices, common scheme (Roncalli); (2) burglary (Roncalli); (3) misdemeanor theft (Roncalli); (4) burglary (Corbally); (5) misdemeanor theft (Corbally); (6) burglary (J.L.); (7) aggravated kidnapping (J.L.); (8) sexual intercourse without consent (J.L.); (9) felony theft (Davis, Mihelish, Knudson, Jack and Jill, and McClain); and (10) alternatively to count nine, felony theft.

¶6    Burton filed a motion to dismiss under § 46-11-504(1), MCA, which the District Court denied. The District Court granted Burton's motion to sever the aggravated kidnapping, sexual intercourse without consent, and burglary charge related to J.L. In October of 2014, a jury found Burton guilty of aggravated kidnapping and sexual intercourse without consent, but not guilty of burglary.

¶7    Subsequently, Burton pled guilty to federal count two, possession of stolen firearms. The other federal charges were dismissed. At the plea hearing, federal prosecutors made an offer of proof demonstrating their intention to prove that Burton possessed the five stolen firearms listed in the indictment, explaining the elements of the offense: Burton

---

[2] The State apparently also removed the Helfert theft from the charges, even though several valuables were taken that were not firearms.

knowingly possessed stolen firearms, he knew or had reasonable cause to believe they were stolen, and the firearms were transported between one state and another before they were stolen. The charge did not include the assertion that Burton had himself stolen the firearms.

¶8 In March of 2015, Burton's second trial was held on the remaining State charges. The jury found him guilty of the remaining counts, except for burglary (Roncalli) and the alternative theft charge. At trial, the State attempted to offer evidence of the stolen firearms. The District Court denied admission of the evidence, and gave the following jury instruction, without objection from Burton:

> Ladies and gentlemen I want to make a statement to you before we get started. At the end of the day there was an exhibit that was being offered when we broke. I have refused that exhibit.
>
> You need to be aware of something. The charges in this case—there are no charges that Mr. Burton stole firearms. So I am going to read you an instruction.
>
> The defendant is not being tried for theft of firearms. He may not be convicted for any other offense other than those charged in this case. For the jury to convict the defendant of any other offenses than that or those charged in the case may result in unjust double punishment of the defendant.
>
> So if we hear some testimony or some reference to firearms, there will be an instruction telling you what to use that for. But if not, you are not to consider it.

After that, no other mention of firearms was made by the parties. Further, the Davis theft was removed from the instructions and verdict form. This action meant that none of the victims from whom firearms had been stolen remained in the count nine theft charges.

¶9 In May 2015, Burton was sentenced in federal court to ten years in prison, to run consecutively to his sentence for crimes related to J.L., and concurrent to all other state

6

counts. Based on the outcome of the federal prosecution, Burton moved to dismiss all the state felony charges on statutory multiple prosecution grounds. The District Court denied Burton's motion, noting the State's removal of all charges covered by the federal prosecution, Burton's motion in *limine* to prohibit the introduction of evidence concerning the federally charged conduct, and the District Court's refusal to admit firearms evidence offered by the State at trial. Burton immediately filed this appeal, on statutory grounds, challenging only counts (1) felony deceptive practices (Roncalli); (4) burglary (Corbally); and (9) felony theft (Mihelish, Knudson, Jack and Jill, and McClain). Consequently, Burton has not yet been sentenced for the state charges in this proceeding.

## STANDARD OF REVIEW

¶10 We review a district court's decision to grant or deny a defendant's motion to dismiss a charge under Montana's statutory protection against double jeopardy, § 46-11-504, MCA, for correctness. *State v. Cline*, 2013 MT 188, ¶ 6, 371 Mont. 18, 305 P.3d 55 (citing *State v. Neufeld*, 2009 MT 235, ¶ 10, 351 Mont. 389, 212 P.3d 1063).

## DISCUSSION

¶11 *1. Can a defendant appeal the denial of a motion under § 46-11-504(1), MCA, prior to the entry of a final judgment?*

¶12 The State moved to dismiss this appeal on the ground there is no final judgment from which to appeal. We permitted the appeal to proceed, based on precedent that has permitted interim appeals in double jeopardy cases. *State v. Burton*, No. DA 15-0593, Or. (Mont. Oct. 13, 2015). The State asks us to reconsider this order, given that the Montana

7

Rules of Appellate Procedure do not provide for interim appeals, and that this is a challenge under statute, as opposed to constitutional double jeopardy.

¶13 Because we have already denied the State's motion to dismiss, and ordered this appeal to proceed, we will address the merits pursuant to the law of the case doctrine. "[W]here a decision has been rendered by the Supreme Court on a particular issue between the same parties in the same case, whether that decision is right or wrong, such decision is binding on the parties and the courts . . . ." *State v. Van Dyken,* 242 Mont. 415, 425, 791 P.2d 1350, 1356 (1990). The doctrine promotes judicial economy and finality of judgments. *In re Estate of Snyder*, 2009 MT 291, ¶ 6, 352 Mont. 264, 217 P.3d 1027.

¶14 However, we also accept the State's invitation to revisit the issue of interim double jeopardy appeals, taken before a final judgment is entered, to clarify the process of review prospectively.

### a. Appeals of constitutional double jeopardy issues.

¶15 Both the Fifth Amendment to the U.S. Constitution and Article II, Section 25 of the Montana Constitution, protect individuals from being twice placed in jeopardy. The United States Supreme Court has held that the Fifth Amendment protects not only against double punishment, but against being tried twice for the same offense. *Abney v. United States*, 431 U.S. 651, 660-61, 97 S. Ct. 2034, 2041 (1977). The *Abney* Court concluded that a double jeopardy challenge must be reviewable before a defendant's exposure to a second trial. *Abney*, 431 U.S. at 662, 97 S. Ct. at 2041. This holding was inconsistent with Montana statute, which provided that criminal cases may be appealed "by the defendant

8

only from a final judgment of conviction and orders after judgment which affect the substantial rights of the defendant." Section 46-20-104, MCA; *see also* M. R. App. P. 6(2). Consequently, citing *Abney*, this Court held that a defendant could raise a constitutional double jeopardy challenge, prior to a second trial, by way of a writ of supervisory control, overruling prior contrary holdings. *Keating v. Sherlock*, 278 Mont. 218, 224-25, 924 P.2d 1297, 1300-01 (1996). This approach ensured, consistent with the Montana Rules of Appellate Procedure, that defendants could have a denial of a double jeopardy challenge reviewed by this Court prior to a second trial.

¶16　Since *Keating*, we have occasionally strayed from this procedure, and entertained interim appeals raising double jeopardy challenges prior to entry of a final judgment. *See, e.g., State v. Violette*, 2015 MT 67, 378 Mont. 320, 343 P.3d 574. In *State v. Barron*, 2008 MT 69, ¶ 8, 342 Mont. 100, 179 P.3d 519, we explicitly created a broadly-stated "interim appeal" for all constitutional double jeopardy issues. ("We conclude that where the challenge before us is one made on double jeopardy grounds, we will accept an interim appeal for the sole purpose of considering the merits of the defendant's double jeopardy claims."); *see also State v. Duncan*, 2012 MT 241, 366 Mont. 443, 291 P.3d 106.

¶17　However, interim appeals are not authorized by the Montana Rules of Appellate Procedure and are, in retrospect, ill-founded. Such appeals are governed, as they must be, by the usual appellate rules, which do not separately contemplate interim appeals, and are necessarily time-consuming and significantly disruptive of a trial court proceeding. In contrast, under the rules, this court can exercise supervisory control over a trial court that

9

is proceeding under a mistake of law with relative promptness and efficiency, and thereby reduce the delay and disruption associated with a mid-proceeding double jeopardy challenge.

¶18 For these reasons, and because the constitutional necessity for pre-trial review under *Abney* can be fulfilled by our supervisory control authority, we overrule our prior jurisprudence recognizing a common law interim appeal for double jeopardy issues. The interim appeal created by *Barron* sanctions delay and piecemeal litigation without a basis in the statutes or rules. We return to *Keating*, and hold that constitutional double jeopardy rulings by a district court may be challenged prior to a final judgment only by way of a petition for writ of supervisory control, as authorized by M. R. App. P. 14(3).

¶19 We have likewise permitted appeals to this Court, following appeal to the district court, of double jeopardy rulings entered by courts of limited jurisdiction, without a final judgment. *See City of Helena v. Whittinghill*, 2009 MT 343, 353 Mont. 131, 219 P.3d 1244. Appeals of a double jeopardy issue from a court of limited jurisdiction to a district court are permitted as a "narrow exception[]" to the general rules governing de novo appeals to the district court, *Whittinghill*, ¶¶ 12-13, as district courts have no jurisdiction to issue a writ of supervisory control over a limited jurisdiction court. *State ex rel. Ward v. Schmall*, 190 Mont 1, 3, 617 P.2d 140, 141 (1980) ("Absent a constitutional provision or statute bestowing upon the District Courts the authority to grant writs of supervisory control over Justice of the Peace Courts, we are obligated to infer that District Courts do not have such power[,]" and overruling cases). However, as with appeals from double

10

jeopardy rulings originating in the district courts, there is no authority for interim appeals to this Court from non-final orders originating in a court of limited jurisdiction following appeal to the district court. Thus, consistent with our ruling above, pre-judgment double jeopardy rulings entered by a court of limited jurisdiction can, following appeal to the district court, be brought to this Court only by way of a petition for a writ of supervisory control. *See, e.g.*, *Huertas v. Billings Mun. Ct.*, 2017 MT 261, 389 Mont. 158, ___ P.3d ___.

### b. Appeals of "statutory double jeopardy" issues.

¶20    Apart from federal and state double jeopardy constitutional jurisprudence, Montana has enacted statutory protections against multiple prosecutions in certain instances. Sections 46-11-503 to -505, MCA. Although the statutes do not employ terminology associated with constitutional double jeopardy jurisprudence, they are commonly referred to as "statutory double jeopardy" provisions. *State v. Glass*, 2017 MT 128, ¶ 9, 387 Mont. 471, 395 P.3d 469; *Cline*, ¶ 8.[3] Our cases have utilized double jeopardy terms and concepts in application of the statute, and at times our constitutional and statutory analyses have intertwined. *See, e.g.*, *State v. Cech*, 2007 MT 184, ¶ 10, 338 Mont. 330, 167 P.3d 389. We have stated that these statutes generally provide criminal defendants "greater protection against double jeopardy than the United States Constitution." *Cline*, ¶ 8 (citations omitted). For our purposes here, we simply note that there are also important distinctions between

---

[3] We have also used the term "multiple prosecutions" statute. *State v. Maki*, 2008 MT 379, ¶ 15, 347 Mont. 24, 196 P.3d 1281; *Lacey v. State*, 2017 MT 18, ¶ 27, 386 Mont. 204, 389 P.3d 233.

11

the statutes and constitutional double jeopardy jurisprudence, for example, in their treatment of the attachment of jeopardy. *Compare* § 46-11-504(2), MCA (statutory protection premised upon an "acquittal, final order, or judgment" that terminated a former prosecution), with *State v. Cates*, 2009 MT 94, ¶ 30, 350 Mont. 38, 204 P.3d 1224 (citations omitted) (attachment of constitutional jeopardy occurs when the jury is impaneled).

¶21 The State urges that an interim appeal of an order denying relief under the multiple prosecution statutes should be prohibited because they are not premised upon the constitutional considerations at issue in *Abney*:

> Unlike these very unique and specific constitutional double jeopardy cases, claims of statutory violations like Burton's are different and should be treated differently. Claims under [§ 46-11-504(1), MCA] have been reviewed and considered by this Court almost exclusively on direct appeal from final judgment—and no such cases have been considered under the very narrow *Barron* or *Schillinger* 'interim appeal' exception.[4]

¶22 The State's argument is well taken. As with constitutional double jeopardy claims, there is no basis in rule or statute for an interim appeal of claims under the multiple prosecution statutes and, more, an interim appeal for violation of statute is not constitutionally compelled. However, a petition for a writ of supervisory control pursuant to M. R. App. P. 14(3) is available for a defendant to assert a pre-trial challenge that a second prosecution will violate the statutes. *See, e.g., State ex rel. Booth v. Mont. Twenty-First Judicial Dist.*, 1998 MT 344, 292 Mont. 371, 972 P.2d 325 (considering both

---

[4] *City of Three Forks v. Schillinger*, 2007 MT 331, 340 Mont. 211, 173 P.3d 681.

12

the statute and constitutional double jeopardy); *State ex rel. Zimmerman v. Mont. Fourth Judicial Dist.*, 168 Mont. 289, 541 P.2d 1215 (1975).

¶23 *2. Did the District Court err by denying Burton's motion under § 46-11-504(1), MCA, to dismiss the charges of deceptive practices, burglary, and felony theft, given his federal conviction for possession of stolen firearms?*

¶24 Burton asserts a violation of § 46-11-504(1), MCA, which provides:

When conduct constitutes an offense within the jurisdiction of any state or federal court, a prosecution in any jurisdiction is a bar to a subsequent prosecution in this state if:

(1)  the first prosecution resulted in an acquittal or in a conviction and the subsequent prosecution is based on an offense arising out of the same transaction . . . .

¶25 We apply a three-part test to determine if the statute has been violated:

1. The defendant's conduct must constitute an equivalent offense within the jurisdiction of the court where the first prosecution occurred and within the jurisdiction of the court where the subsequent prosecution is pursued;

2. The first prosecution must result in an acquittal or a conviction; and

3. The subsequent prosecution must be based on an offense arising out of the same transaction.[5]

*Cline*, ¶ 9 (citations omitted); *Neufeld*, ¶ 11 (citations omitted); *State v Gazda*, 2003 MT 350, ¶ 12, 318 Mont. 516, 82 P.3d 20; *Cech*, ¶ 13 (citation omitted); *Heddings v. State*, 2011 MT 228, ¶ 22, 362 Mont. 90, 265 P.3d 600 (citations omitted); *State v. Fox*, 2012 MT

---

[5] "Conduct" is defined by statute as "an act or series of acts and the accompanying mental state." Section 45-2-101(15), MCA. "Offense" is defined twice, as "a crime for which a sentence of death or of imprisonment or a fine is authorized[,]" § 45-2-101(49), MCA, and as "a violation of any penal statute of this state or any ordinance of its political subdivisions[,]" § 46-1-202(15), MCA.

13

172, ¶ 19, 366 Mont. 10, 285 P.3d 454 (citations omitted). If any one of the three factors is not satisfied, there is no statutory violation. *Cech*, ¶ 13 (citations omitted).

¶26 We can state the test in application to this case as follows:

1. Burton's conduct must constitute an equivalent offense in the federal and Montana jurisdictions;

2. The federal prosecution must have resulted in an acquittal or a conviction; and

3. The State's prosecution must be based on an offense arising out of the same transaction.

Burton challenges three of his state convictions, each of which we compare to the federal offense in application of the statute.

### a. Count 4, burglary of the Corbally residence.

¶27 We resolve this claim under the first prong of the test, which requires that Burton's conduct constitute an equivalent offense in the federal and Montana jurisdictions. For the first prong to be met, it is not necessary that a defendant be charged with identical offenses in both jurisdictions, only that his conduct constitute an equivalent offense in both jurisdictions. *Cech*, ¶ 18; *Cline*, ¶ 11. If a jurisdiction could have brought a charge for the conduct, but declined to do so, the first prong would nonetheless be met. *Cech*, ¶ 18. However, if a defendant's conduct does not constitute an offense in the first jurisdiction, but does in the second, the statute does not prohibit prosecution. *Gazda*, ¶ 15.

¶28 In *Cline*, Cline stole firearms and other, non-firearm merchandise from his employer. *Cline*, ¶ 4. Cline was convicted in federal court of possession of stolen firearms, and was charged by the State of Montana with theft by common scheme. *Cline*, ¶¶ 4-5.

14

After Cline filed a motion to dismiss for violation of the multiple prosecution statute, the state amended its complaint to charge Cline with only theft of the non-firearm items. *Cline*, ¶ 5. We held the first prong was not satisfied because "Cline's theft of non-firearm items, in contrast, did not form the basis of his conviction for theft of firearms. Cline never has been punished, or put in jeopardy, for his theft of the non-firearm items." *Cline*, ¶ 19.

¶29 Similarly, regarding the Corbally burglary charge, Burton broke into the household and stole firearms and other valuables, including commemorative coins. He was convicted of possessing the stolen firearms in federal court. The State brought charges for the burglary and theft of the non-firearms, over which, as in *Gazda*, the federal court did not have jurisdiction. Burton argues that the first prong is met because the firearms were taken at the same time as the other valuables. While this might be an effective argument under the third prong, our precedent makes clear that the theft of the firearms is not equivalent to theft of the other valuables. *Cline*, ¶ 12.

¶30 Further, the state relied on conduct that was distinct from the conduct considered by the federal court. The federal court considered that Burton possessed stolen firearms, but did not consider that Burton broke into a home and stole other valuables, which provided the basis for the state charge. Thus, Burton's conduct does not constitute an equivalent offense under the first prong, and we need not consider the other prongs.

### b. Count 1, felony deceptive practices for the use of Roncalli's credit card.

¶31 We resolve this claim under the third prong, because the State's prosecution was not based on an offense arising out of the same transaction.

15

¶32    "Same transaction" means:

conduct consisting of a series of acts or omissions that are motivated by:

(a) a purpose to accomplish a criminal objective and that are necessary or incidental to the accomplishment of that objective; or

(b) a common purpose or plan that results in the repeated commission of the same offense or effect upon the same person or the property of the same person.

Section 46-1-202(23), MCA; *see also Neufeld*, ¶ 20 (citations omitted) ("Offenses arise from the same transaction when a defendant's underlying conduct which gives rise to each prosecution is motivated by a purpose to accomplish the same criminal objective.").

¶33    In *Neufeld*, we held that, where the two subject charging documents referenced the same time, the same conduct, and the same victim, the charges involved the same transaction. *Neufeld*, ¶ 19. In contrast, in *Heddings*, we held that because the state and federal charges "involved different victims, different offenses and different time periods[,]" they did not constitute the same transaction. *Heddings*, ¶ 27. Similarly, in *Fox*, we held that because two separate victims were victimized at different times, it was not the same transaction. *Fox*, ¶ 26. Fox molested two siblings. *Fox*, ¶¶ 7-9. He was convicted in federal court of possession of nude photographs of one of the sisters, but the State was not barred from pursuing charges based on his molestation of the other sister. *Fox*, ¶ 26.

¶34    Burton argues that using the credit card was incidental to the federal charges because he used the credit card to fuel the vehicles used when he robbed Bowser's Casino and burglarized the Davis house, stealing a firearm. However, this connection is too attenuated to even be considered "necessary or incidental" to the federal charge of possession of stolen

16

firearms. Burton also argues the charges involved the same transaction because they were part of a common purpose or plan. However, the crimes involved very different conduct committed against different victims. Separate crimes do not have a common purpose or objective merely because they occurred temporally within a defendant's crime spree. A more "necessary or incidental" purpose is required under the statute. Otherwise, all crimes committed around the same time would constitute the same transaction.

¶35 Burton's case is similar to *Fox*. Like Fox, Burton victimized different individuals. As charged, Burton burglarized Roncalli and subsequently used her credit card. Burton stole no firearms from Roncalli, and thus none of the federal charges were based on the crimes that victimized Roncalli. Therefore, the state was not barred from prosecuting Burton for his use of Roncalli's credit card. The state charge did not involve any conduct in relation to the theft or possession of firearms.

### c. Count 9, felony theft from McClain, Jack and Jill Sports Memorabilia, Knudson, and Mihelish.

¶36 We likewise here conclude that the State's prosecution was not based on an offense arising out of the same transaction, and therefore the third prong was not satisfied.

¶37 Burton argues that all the thefts were motivated by a purpose to accomplish the same criminal objective as the federal firearm charges, and thus constitute the same transaction. However, the state charges involved non-firearm property and occurred at different locations, upon different victims, and at different times, over a period of 13 months. The record demonstrates no particular connection between the firearm crimes committed against Kosena, Helfert, Davis, Corbally, and Capital Jewelry and Loan, with the thefts

17

from McClain, Jack and Jill, Knudson, and Mihelish, except that they were part of Burton's lengthy crime spree. They did not involve "the repeated commission of the same offense or effect upon the same person or the property of the same person." Section 46-1-202(23)(b), MCA.

¶38 Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA