FILED

05/04/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0369

DA 19-0369

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 105

STATE OF MONTANA,

Plaintiff and Appellee,

v.

MALCOLM JOSEPH NEWROBE, SR.,

Defendant and Appellant.

APPEAL FROM:     District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. ADC 16-575
Honorable Gregory G. Pinski, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Appellate Defender, James Reavis, Assistant Appellate
Defender, Helena, Montana

For Appellee:

Austin Knudsen, Montana Attorney General, Mardell Ployhar, Assistant
Attorney General, Helena, Montana

Joshua A. Racki, Cascade County Attorney, Susan Weber, Carolyn
Mattingly, Deputy County Attorneys, Great Falls, Montana

Submitted on Briefs:  April 7, 2021

Decided:  May 4, 2021

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1     Malcolm Joseph Newrobe, Sr. appeals his conviction for sexual intercourse without consent and bail jumping entered in the Eighth Judicial District Court, Cascade County. Newrobe was originally charged with incest; a jury was impaneled; and the State was near conclusion of its case when the court reporter became ill and was taken to the hospital. The District Court declared a mistrial. During the month between Newrobe's first and second trial, the State amended its charge to correct a fatal deficiency in its original charging documents. Newrobe addressed the deficiency in a motion to dismiss at the time the District Court declared a mistrial. We conclude Newrobe's subsequent prosecution for sexual intercourse without consent and bail jumping for the identical incident as his first prosecution was barred by the Double Jeopardy Clauses of the United States and Montana Constitutions. Accordingly, the District Court abused its discretion in declaring a mistrial and Newrobe's convictions for sexual intercourse without consent and bail jumping are dismissed with prejudice.

¶2     Although numerous issues have been raised on appeal, the singular and dispositive issue we address is:

*Whether the District Court abused its discretion in declaring a mistrial and erred in concluding that double jeopardy did not bar Newrobe's retrial.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     On October 14, 2016, the State charged Newrobe with incest, pursuant to § 45-5-507, MCA, alleging he had sexual intercourse with his 16-year-old niece, V.B., in March 2015. Trial was first scheduled for February 27, 2017. In early February, and

2

several times thereafter, Newrobe moved to continue his trial and ultimately a final trial date was set for September 18, 2017. Newrobe, however, failed to appear on September 18, 2017, and an arrest warrant was issued. The State then amended the charges to include bail jumping. Newrobe was arrested on September 27, 2017, and trial was rescheduled for January 22, 2018. Newrobe once again moved to continue trial. The court set a new date of April 16, 2018, and indicated no further continuances would be allowed. On April 18, 2018, the State moved to set a change of plea and vacate trial based on a plea agreement signed by Newrobe. However, at the change of plea hearing on June 6, 2018, Newrobe requested to go to trial.

¶4 Newrobe's trial began on December 10, 2018. A jury was impaneled and the State began its case and presented witnesses. V.B. testified that she and her brother, D.B., were alone in their home with Newrobe, who was her mother's brother, and their uncle. While D.B. was in the shower, Newrobe pushed V.B. down on her brother's bed, removed her pants, licked her vagina, and had sexual intercourse with her while holding her down. Newrobe stopped when D.B. walked in on them. The next day, Newrobe asked if he could have sex with V.B. again, and she refused. At school on Monday, V.B. reported the incident to her teacher and was taken to the hospital for further examination, including an examination performed by the State Crime Lab which compared semen stains on her underwear and established it matched Newrobe's DNA.

¶5 Upon conclusion of the second day of trial, the court asked the parties to provide a definition for "descendent," as it pertains to the incest statute, so that jury instructions could be prepared. The court observed that the comments to the incest statute indicate incest

3

does not apply to an uncle-niece relationship. The State was not able to provide a definition under the statute, but suggested it referred to a direct descendant or a collateral descendent. Due to the inconsistencies, the court determined it would discuss the matter with the parties the next morning, December 12, before trial.[1]

¶6      On December 12, 2018, the District Court informed the parties that his court reporter, an hour earlier, had either a heart attack or stroke in his chambers and was currently at the hospital. The court explained another court reporter would fill in to make a record. The District Court offered that in addition to being "extraordinarily close to my court reporter," "witnessing this event that happened this morning has been extraordinarily difficult for me." The court said that on "a personal note" he had witnessed his father have a heart attack. The court advised there was no other court reporter available and an audio recording was inherently unreliable and would be insufficient to record witnesses who would be appearing by video. Based on the lack of a court reporter and "these personal and professional circumstances, the court f[ound] that the manifest necessity standard [wa]s met to grant a mistrial" and explained it had "no choice but to do that for the reasons here today." The court indicated, without input from counsel, that it would dismiss the jury and the parties could file any motions they wanted.

¶7      Newrobe interjected and voiced his objection to the mistrial and moved to dismiss the charges with prejudice because the jury was impaneled. Newrobe argued that the State,

---

[1] The Criminal Law Commission Comments to § 45-5-507, MCA, provide: "This section is patterned after the Model Penal Code. The uncle-aunt-nephew-niece cases are excluded from 'felonious incest,' in view of the severity of the penalty."

although it had yet to conclude its case, could not prove the elements of incest because the uncle-niece familial relationship did not satisfy the "descendent" element under the incest statute. Alternatively, Newrobe asked for a continuance because most of the trial had been completed and only two forensic witnesses remained to testify. The court explained it was not in a position to rule on any motions and it could not keep the jury impaneled long enough to find another court reporter. The only other court reporter was in another trial and there were no local court reporters available. The court rescheduled trial for January 9, 2019.

¶8 On December 14, 2018, the State filed an amended information changing the incest charge to sexual intercourse without consent. Newrobe filed a motion to dismiss on December 17, 2018, asserting a second trial would violate the Double Jeopardy Clauses of the United States and Montana Constitutions because there was no manifest necessity in his first trial to declare a mistrial. The State responded that the court had established manifest necessity to grant a mistrial and further argued that it could have amended the incest charge to attempted incest, as such an amendment would have been only procedural and therefore allowable. Newrobe filed a motion to continue on December 18, 2018, arguing he needed more time to establish a defense for the amended charge of sexual intercourse without consent. The court denied Newrobe's motions and concluded the trial was not barred by double jeopardy.

¶9 Newrobe's second trial began January 9, 2019, and Newrobe was found guilty of sexual intercourse without consent and bail jumping. The District Court imposed a sentence of 65 years to the Montana State Prison with 25 years suspended for

5

sexual intercourse without consent, and 10 years for the bail jumping charge. The sentences were to run consecutively. The District Court gave Newrobe 596 days for time served.

## STANDARDS OF REVIEW

¶10 This Court reviews a trial court's declaration of a mistrial for an abuse of discretion. *City of Billings ex rel. Huertas v. Billings Mun. Court*, 2017 MT 261, ¶ 14, 389 Mont. 158, 404 P.3d 709 (citing *State v. Cates*, 2009 MT 94, ¶ 21, 350 Mont. 38, 204 P.3d 1224). We will affirm a trial judge's decision if he or she acted rationally and responsibly in declaring a mistrial. *Huertas*, ¶ 14 (citing *Cates*, ¶ 21). A trial court's denial of a defendant's motion to dismiss criminal charges on double jeopardy grounds is a question of law that we review for correctness. *Huertas*, ¶ 15 (citing *State v. Stone*, 2017 MT 189, ¶ 10, 388 Mont. 239, 400 P.3d 692).

## DISCUSSION

¶11 The Fifth Amendment of the United States Constitution and Article II, Section 25, of the Montana Constitution, protect citizens from being placed twice in jeopardy for the same offense. U.S. Const. amend. V ("Nor shall any person be subject for the same offense to be twice put in jeopardy . . . ."); Mont. Const. art. II, § 25 ("No person shall be again put in jeopardy for the same offense previously tried in any jurisdiction."). These provisions "seek to provide finality for a criminal defendant and are important because the prosecution, with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense." *Huertas*, ¶ 17 (citing *Cates*, ¶ 30) (internal citations omitted). During a jury trial, jeopardy attaches as soon as the jury is

6

impaneled and sworn. *Huertas*, ¶ 18. "When a mistrial is declared after jeopardy attaches, the defendant's valued right to have his trial completed by a particular tribunal is also implicated." *Huertas*, ¶ 18 (citing *Cates*, ¶ 31) (internal citations omitted). Here, the jury was impaneled and sworn on December 10, 2018. There is no question that Newrobe's right to be free from double jeopardy was implicated at that time.

¶12 After a defendant's double jeopardy rights are implicated and a mistrial is declared, a "second criminal trial is barred unless there was a manifest necessity to terminate the trial or the defendant acquiesced in the termination." *Huertas*, ¶ 19 (citing *Cates*, ¶ 33). Manifest necessity to discontinue a trial exists when "particular circumstances manifest a necessity for so doing, and when failure to discontinue would defeat the ends of justice." *Huertas*, ¶ 19. "A mistrial is an 'exceptional remedy' and therefore a remedial action short of a mistrial is preferred unless the ends of justice require otherwise." *Huertas*, ¶ 19 (internal citations omitted). Necessity is observed in terms of degree, and sufficient manifest necessity in the double jeopardy context requires a high degree of necessity. *Huertas*, ¶ 20 (citing *State v. Carney*, 219 Mont. 412, 417, 714 P.2d 532, 535 (1986)).

> The strictest scrutiny is appropriate when the basis for the mistrial is the unavailability of critical prosecution evidence, or when there is reason to believe that the prosecutor is using the superior resources of the State to harass or *to achieve a tactical advantage over the accused.*
>
> At the other extreme is the mistrial premised upon the trial judge's belief that the jury is unable to reach a verdict, long considered the classic basis for a proper mistrial . . . .

*Carney*, 219 Mont. at 417, 714 P.2d at 535 (quoting *Arizona v. Washington*, 434 U.S. 497, 5006-09, 98 S. Ct. 824, 831-32 (1978)) (emphasis added) (omissions in *Carney*).

Importantly, a "more stringent manifest necessity standard applies when a trial court considers declaring a mistrial without the defendant's request or consent." *State v. Partin*, 287 Mont. 12, 16, 951 P.2d 1002, 1004 (1997).

¶13 In *Huertas*, the district court declared a mistrial on the basis that potentially inaccurate and prejudicial information to the State was presented to the jurors. *Huertas*, ¶ 11. This Court held that at the time the court declared a mistrial, the City's witness had made only two potentially damaging statements and could have been rehabilitated through redirect examination. *Huertas*, ¶ 21. We explained that the court's statements that the City was unaware of the witness' testimony, that the City was disadvantaged by the testimony, that a conflict now existed, and that the jury was "poisoned" was "insufficient to establish manifest necessity to terminate the proceeding, particularly when remedial measures were available." *Huertas*, ¶ 21.

¶14 In *Carney*, the State sought an interlocutory appeal of an evidentiary ruling made during the course of a trial following the impaneling of a jury. The trial court declared a mistrial as a result of the State's insistence on pursuing its interlocutory appeal. After first concluding that the State did not have a right to appeal the evidentiary ruling, we turned to whether double jeopardy prohibitions barred the State from prosecuting Carney a second time for the identical incident. We explained that "[i]n seeking to determine whether there was 'manifest necessity' to discontinue the trial and allow an interlocutory appeal, *the court must exercise the greatest caution, under urgent circumstances, and for plain and obvious cases . . . . Under that standard, a trial should be discontinued with great caution.*" *Carney*, 219 Mont. at 418, 714 P.2d at 535 (emphasis added).

8

¶15 During Newrobe's trial on the incest charge, the court declared a mistrial due to the unavailability of a court reporter and the emotional impact on the trial judge of having just witnessed a member of his staff fall ill. The court declared a mistrial despite the clear and well-articulated objection of Newrobe's counsel that the State's case had nearly been presented and, as a matter of law, they could not establish the existence of the familial relationship required to prove incest. Newrobe argued V.B.'s testimony had already established the State could not prove the incest charge. Indeed, at the time the court declared a mistrial, the State's remaining two witnesses, a DNA expert and a serologist, would have done nothing to salvage the fatal flaw in this relationship element. We cannot ignore the obvious effect of the court's actions: the mistrial secured to the State a "tactical advantage over the accused," by allowing the State to amend its charge to an entirely different offense—sexual intercourse without consent—and correct its original improper and fatally flawed charge. *See Carney*, 219 Mont. at 417, 714 P.2d at 535. Limiting the State to a single criminal proceeding despite its flawed charge is, at its core, the principle underlying the prohibition against placing a defendant "twice in jeopardy" and the procedural protections which prevent the State from subjecting an individual to repeated prosecutions for the same offense.

¶16 Our review of the record does not support a conclusion that the District Court exercised great caution before declaring a mistrial, or that the circumstances were urgent, or that it was plainly obvious that only a mistrial would provide justice. Within an hour of the court reporter falling ill, the court declared a mistrial. The court did so without seeking input from counsel to consider alternatives short of imposing this "exceptional remedy."

Indeed, Newrobe's counsel had to interrupt the court, after the court had already made its decision to declare a mistrial, to preserve his objection to the mistrial and move the court to dismiss the charges. Alternatively, Newrobe's counsel asked for a continuance. The court, despite admitting that it was "personally and professionally" unable to address the substance of any motions, nonetheless issued an order granting the extreme remedy of declaring a mistrial over Newrobe's objection. The court did not allow time to collect itself or to explore options to continue the trial, locate a court reporter, and have the jury summoned back after a temporary recess. Trial could have resumed later in the afternoon or the next day so that a remedy short of declaring a mistrial could be considered or perhaps had. While we acknowledge the emotional impact of these circumstances on this particular trial judge, trial judges must deal with emotional issues, often touching on them personally, on a daily basis. It is the court's function to protect a defendant's constitutional right to have his trial completed in front of the duly constituted and impaneled jury with which he began and selected. The District Court, here, did nothing to protect Newrobe's "valued right to have his trial completed by a particular tribunal," particularly when Newrobe would have been acquitted, as a matter of law, of the incest charge before this first tribunal. *United States v. Dinitz*, 424 U.S. 600, 606, 96 S. Ct. 1075, 1079 (1976).

¶17    Applying the more stringent manifest necessity standard—i.e., when a mistrial has been declared without the defendant's request or consent—we conclude that the court abused its discretion in declaring a mistrial. *See Huertas*, ¶ 20. Newrobe did not request a mistrial and there was no manifest necessity to declare a mistrial. Newrobe's second trial

10

on the amended charge of sexual intercourse without consent and bail jumping violated his constitutional rights to be free from double jeopardy.

## CONCLUSION

¶18 The District Court abused its discretion in declaring a mistrial. Newrobe's second trial on the amended charge of sexual intercourse without consent and bail jumping violated his federal and State fundamental constitutional rights to be free from double jeopardy. Accordingly, Newrobe's conviction for sexual intercourse without consent and bail jumping are dismissed with prejudice.

/S/ LAURIE McKINNON

We concur:

/S/ DIRK M. SANDEFUR
/S/ INGRID GUSTAFSON
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE

11